[L. A. No. 6375.  In Bank.—July 27, 1920.]

## In the Matter of the Estate of PIETRO BENVENUTO, Deceased.

[1] ESTATES OF DECEASED PERSONS—SALE OF PROPERTY—EFFECT OF CODE AMENDMENT—PRELIMINARY ORDER OF SALE UNNECESSARY.— The effect of the amendment of 1919 to section 1536 of the Code of Civil Procedure, in omitting the requirement that a sale of property of an estate of a deceased person must be upon the order of the court, is that a preliminary order is no longer required in order to authorize the administrator or executor to negotiate a sale of the property for the purposes and reasons for which a sale is authorized by the section.

[2] ID.—NECESSITY FOR SALE—TIME OF DETERMINATION—EFFECT OF CODE AMENDMENT.—The effect of the amendment of 1919 to section 1552 of the Code of Civil Procedure providing that upon the hearing of the return of sale of property of an estate of a deceased person the court must examine into the necessity for the sale, or the advantage, benefit, and interest of the estate in having the sale made, is that the questions whether a sale is necessary for the payment of debts, expenses of administration, or legacies, and whether a sale would be for the best interests of the estate are now to be decided upon the hearing of the return and application for confirmation, instead of upon the hearing of the petition for an order of sale as formerly provided by sections 1540, 1542, 1543 and 1544 of such code.

[3] ID.—SUCCESSION OF PROPERTY OF INTESTATE.—The property of an intestate decedent vests in his heirs upon his death, subject to the burdens imposed upon it by the law in force at that time for the purpose of paying the debts of the decedent and the expenses of administration of the estate, and also subject to sale by the executor or administrator for such reasons and purposes as may be then authorized by law.

[4] ID.—CHANGE OF PROCEDURE IN SALES OF PROPERTY—POWER OF LEGISLATURE.—The legislature cannot by amending the law after the death of an intestate impose upon his property any new or additional burdens, or authorize a sale thereof for new reasons or other purposes; but it may enact new laws prescribing a different mode of procedure for making and confirming sales to satisfy such purposes or carry out such objects as were provided for by the law in force at his death.

[5] ID.—ADDITIONAL BOND—APPLICABILITY OF CODE PROVISION TO NEW METHOD OF SALE.—The provision of section 1389 of the Code of Civil Procedure that the court must direct the giving of

an additional bond whenever the sale of any real estate belonging to an estate "is ordered," unless the bond already given is sufficient, remains applicable to the mode of sale provided by the amendment of 1919, since the sale "is ordered" when it is confirmed and the deed is directed to be made.

[6] ID.—PERSONAL NOTICE OF PROCEEDINGS—RIGHTS OF HEIRS UNDER NEW METHOD.—The change made by the amendment of 1919 in the method of making sales of real property belonging to estates does not deprive the heirs of the right to have personal notice of the proceedings for the sale as provided by section 1380 of the Code of Civil Procedure, since the phrase, "filing of petitions for sales," in such section may be held to apply to the return of sale required by section 1552.

[7] ID.—TIME OF CREDIT—DISCRETION OF ADMINISTRATOR—POWER OF LEGISLATURE.—The repeal in 1919 of section 1544 of the Code of Civil Procedure which prohibited an administrator from selling real property upon a credit exceeding one year, and giving the administrator under the scheme of sale provided by the amended sections discretion as to the time of credit, was within the power of the legislature, being a mere incident of the power to sell property for the payment of debts.

[8] ID.—APPLICABILITY OF CODE AMENDMENTS TO PENDING ADMINISTRATIONS.—The amendments of the code sections relating to sales of property of estates of deceased persons are prospective in that they do not apply to proceedings already completed at the time they were enacted, but they do apply to all proceedings begun thereafter, including pending administrations.

APPEAL from an order of the Superior Court of Santa Barbara County confirming a sale of real property. S. E. Crow, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. C. Postel and C. H. Brock for Appellant.

Richards, Heaney & Price for Respondent.

SHAW, J.—This is an appeal from an order confirming a sale of real estate made by the administrator of the estate of said decedent.

The administrator did not file any petition for an order authorizing a sale, nor was such order ever made. He filed a return of the sale and asked confirmation thereof by the court. Notice of the hearing on the return was given as pro-

vided by section 1552 of the Code of Civil Procedure as amended in 1919. At the hearing the court made findings in accordance with the allegations of the return, 'and thereupon confirmed the sale. Herein the administrator and the court below proceeded under the authority of the provisions of the act which took effect July 25, 1919, amending sections 1516, 1517, 1522, 1523, 1525, 1536, 1545, 1547, 1549, 1552, 1554, 1555, 1559, 1565 and 1570 of the Code of Civil Procedure, and of the act taking effect on the same date repealing sections 1537, 1538, 1539, 1540, 1542, 1543 and 1544. (Stats. 1919, p. 1177.)

The decedent died intestate on November 22, 1911. His property, of course, descended to and vested in his heirs at that date, subject to administration in accordance with the law then in force. It is contended by the appellant, who is the widow and heir of said decedent, that the amendment of 1919 is invalid with respect to the estates of persons who died before the amendment took effect. She claims that it imposes additional burdens upon the property and, if operative, would divest rights of the heirs which were previously vested in them.

The amendment made no change in section 1516, except that it omits the words, "as the court may direct," from the clause declaring that the property of the estate "may be sold as the court may direct, in the manner prescribed in this chapter." Section 1517, prior to the amendment of 1919, provided that "No sale of any property of an estate of a decedent is valid unless made under order of the superior court, except as otherwise provided in this chapter." The amended section omits this clause and in lieu thereof declares that "The executor or administrator may sell any property of the estate of a decedent without order of court, and at either public or private sale, as the executor or administrator may determine." The remainder of the section declares expressly "that no sale of such property *is valid* unless" reported, under oath, to and confirmed by the court. Section 1536 prior to the amendment read as follows:

"When a sale of property of the estate is necessary to pay the allowance of the family, or the debts outstanding against the decedent, or the debts, expenses, or charges of administration, or legacies; or when *it appears to the satisfaction of the court that* it is for the advantage, benefit and

best interests of the estate, and those interested therein, that
the real estate, or some part thereof, be sold, the executor or
administrator may sell any real as well as personal property of
the estate, *upon the order of the court."*

In the section as amended the italicized words are omitted.
[1] The effect is that a preliminary order of the ccurt is
no longer required in order to authorize the administrator
or executor to negotiate a sale of the property of the estate
for the purposes and reasons for which a sale is authorized
by the section.

It is further to be noted that section 1380 of the said code
provides that any person interested in an estate may make
a written request to the executor or administrator, stating
his postoffice address, and that he requires special notice of
the filing of petitions for sales of property and certain other
petitions described, and that thereafter notice of the filing
of such petitions shall be served upon such party within two
days after the filing thereof, either personally or by United
States mail, and that the court, upon the hearing of the
petition, shall find and declare that such notice has been
given. The appellant, prior to the sale in question, gave to
the administrator the notice as provided in this section.

The amendment of section 1552 made no change in the
manner of giving notice of the hearing of the return of sale.
The notice was given in the present case in the manner pre-
scribed and in addition thereto the notice as required by
section 1380 as aforesaid. The appellant appeared at the
hearing. In its order confirming the sale the court states
that the sale was made without any order of the court first
had or obtained, and without serving any notice upon said
appellant of the application for such order, but that the
appellant received due personal notice of the filing of the
return of sale and of the date of the hearing thereof. The
amendment to section 1552, however, provided that upon such
hearing the court "must examine into the necessity for the
sale, or the advantage, benefit and interest of the estate in hav-
ing the sale made, and must examine the return and wit-
nesses in relation to the sale, and if good reason does not
exist for such sale," or if it was unfair or for less than
its value, the court may vacate the sale or direct a new sale.
[2] The change made by the amendment in this respect
is that the questions whether a sale is necessary for payment

CLXXXIII—25

of debts, expenses of administration, or legacies, and whether a sale would be for the advantage, benefit, and best interests of the estate, as provided in section 1536, are now to be decided upon the hearing of the return of sale and application for confirmation thereof, instead of upon the hearing of the petition for an order of sale as formerly provided by sections 1540, 1542, 1543 and 1544, which sections were repealed by the amending act of 1919.

The principles governing the question of the validity of the amendments, with respect to estates of persons previously deceased, are well established. [3] The property of an intestate decedent vests in his heirs upon his death, subject to the burdens imposed upon it by the law in force at that time for the purposes of paying the debts of the decedent and the expenses of the administration of the estate, and also subject to sale by the executor or administrator for such reasons and purposes as may be then authorized by law. [4] But the legislature cannot, by amending the law after his death, impose upon the property of a decedent any new or additional burdens, or authorize a sale thereof for new reasons or other purposes. It may, however, enact new laws prescribing a different mode of procedure for making and confirming sales to satisfy such purposes or carry out such objects as were provided for by the law in force at his death. In *Brenham* v. *Story*, 39 Cal. 183, one Charles White died intestate in 1853. The law then in force made his property subject to sale only for the payment of his debts and the expenses of administration. In 1861 a special act (special laws being then permitted by the constitution) was passed by the legislature purporting to authorize the administrator of the estate of White to sell his real estate, without first having obtained an order of court therefor, "as in the judgment of the said administrator will best promote the interest of those entitled to the estate." (Stats. 1861, p. 152.) It further provided for a return of sale and for confirmation thereof by the court. The court said that the estate of the decedent was subject to the payment of his debts and expenses of administration, which were burdens upon it, in the nature of liens; that it was competent for the legislature, after the death of a decedent, to enact "laws which prescribe the manner in which these paramount claims shall be satisfied"; that such laws "are held to be entirely reme-

dial''; that ''such acts have been uniformly held valid where
it appeared to be in execution of these liens.'' The sale was
held void, not because of the provision in the act that the
sale could be made without first obtaining an order to sell,
but because it authorized a sale by the administrator when
such sale ''would advance the interests of those entitled to
the estate; the sale was to be in the interest of the heirs as
owners, and not to satisfy the paramount lien imposed by
law upon the property of the decedent,'' and it was said
that ''the legislature has no more right to order a sale of
his (the heir's) vested interest in his inheritance, because
it will be, in the estimation of the administrator and the
probate judge, for his advantage, than it has to direct the
sale of the property of any other person acquired in any
other way.'' So, in *Estate of Packer*, 125 Cal. 397, [73 Am.
St. Rep. 58, 58 Pac. 59], a similar ruling was made. Packer
died in 1891. In 1893 sections 1536 and 1537 were amended so
as to provide, as 1536 now provides, that a sale of property
of a decedent could be made when it was ''for the advan-
tage, benefit, and best interests of the estate, and those
interested therein.'' The court held that the property of
decedents who had died before said amendments were enacted
could not be sold for that reason, the court saying that the
legislature could not, after the title had vested in the heir,''
empower the administrator to sell the inheritance for pur-
poses not authorized at the time the title vested and to
which it was not subject when it vested.'' (See, also, *Prior*
v. *Downey*, 50 Cal. 409, [19 Am. Rep. 656] ; *Estate of Por-
ter*, 129 Cal. 89, [79 Am. St. Rep. 78, 61 Pac. 659] ; *Murphy*
v. *Farmers' etc. Bank*, 131 Cal. 115, [63 Pac. 368, 731] ;
*Estate of Newlove*, 142 Cal. 379, [75 Pac. 1083] ; *Estate of
Bazzuro*, 161 Cal. 74, [118 Pac. 434].)

With respect to the power of the legislature to provide
new methods of procedure for the making of sales for purposes
authorized by law at the time of the death of the decedent
the decisions also establish the rule above stated. It was
clearly stated in *Brenham* v. *Story, supra,* as above related.
In *Murphy* v. *Farmers Bank, supra,* after a testator's death,
sections 1577 and 1578 of the code were amended so as
to authorize the administrator, upon the order of the court, to
mortgage the property of the estate to provide money for the
payment of the debts. It was held that the devisee took the

land subject to a charge for the debts of the deceased and to the law authorizing a sale for payment thereof, and that "to authorize the mortgage of the property for the express purpose of raising money with which to pay these charges is but to change the form of the lien and adds no new burden not already borne by the property, or to which the property may be subjected under the law as it existed when the testator died," and that the amended law was valid with respect to estates of decedents whose death occurred prior to its passage. The decision in *Estate of Freud,* 131 Cal. 668, 674, [82 Am. St. Rep. 407, 63 Pac. 1080], is to the same effect. The rule is thus stated by Judge Cooley: "As a general rule, every state has complete control over the remedies which it offers to suitors in its courts. It may abolish one class of courts and create another. It may give a new and additional remedy for a right or equity already in existence. And it may abolish old remedies and substitute new, or even without substituting any, if a reasonable remedy still remains. . . . And any rule or regulation in regard to the remedy which does not, under pretense of modifying or regulating it, take away or impair the right itself, cannot be regarded as beyond the proper province of legislation." (Cooley's Constitutional Limitations, 7th ed., p. 515.) And with regard to matters of defense the same author says: "A party has no vested right in a defense based upon an informality not affecting his substantial equities" (Id., p. 529). In 12 Corpus Juris, at page 975, it is said: "Existing remedies may be modified or impaired, particular remedies may be taken away, one particular remedy may be made the exclusive one, or one remedy may be substituted for another. . . . There must remain, however, a remedy that is not merely colorable, but is real and substantial." To all these points many cases are cited in the footnotes. In the light of these authorities we proceed to examine the objections raised by the appellant.

Section 1389 of the Code of Civil Procedure provides that the court must direct the giving of an additional bond "whenever the sale of any real estate belonging to an estate is ordered," unless the bond already given is sufficient as therein prescribed. The appellant claims that as this may be done only when a sale of real estate "is ordered," the repeal of the sections which provide for the filing of a peti-

tion for sale, the making and service of an order to show cause and the making of an order directing a sale (secs. 1537, 1538, 1539, 1542, 1543, 1544) deprives the appellant of the opportunity to ask for an additional bond and the court of the power to require one, and thereby deprives her of the protection which such bond would afford. If this were the effect of the repeal, perhaps the objection would be good. [5] But we think section 1389 remains applicable to the mode of sale now provided. The court has power, under section 1389, to require an additional bond when a sale ''is ordered.'' By the law as amended the administrator is authorized to make what is in substance no more than an agreement of sale fixing the price and the terms thereof. He makes return of this to the court for approval and confirmation. (Sec. 1517.) Thereupon notice must be given, as the law provides, of the time of hearing the return. Upon the hearing the court must examine witnesses and determine whether the sale is a proper one and it may order a new sale for the causes therein stated, or it may vacate the sale, or approve the one already made. (Sec. 1552.) If it approves the sale it must thereupon make an order confirming the sale and direct a conveyance to be executed. (Sec. 1554.) The conveyance must thereupon be made by the executor to the purchaser and it operates to convey to him all the right, title and interest of the decedent in the premises at the time of his death. (Sec. 1555.) These proceedings constitute an order of sale and thereby a sale ''is ordered.'' It requires no stretch of construction to bring these proceedings within the meaning of that term as used in section 1389 and to hold that a sale ''is ordered'' when it is confirmed and the deed is directed to be made. The notice to be given upon the filing of the return of sale is sufficient to constitute due process of law, and it affords to the parties interested the opportunity to appear and ask for an additional bond in case they consider the bond already given insufficient. The amended law does not in this respect deprive the heirs of any right which they previously had, but merely changes to a very slight extent the time and place of asserting such right.

[6] It is also claimed that the heirs are deprived of the right to have personal notice of the proceedings for the sale as provided in section 1380. Under the authorities above

cited this could not be considered fatal to the validity of the law as applied to descents cast, for, as above stated, the code would still provide due process of law before a sale could be actually made. But the liberal construction which the code declares it must receive "to effect its objects and to promote justice" (sec. 4) justifies the conclusion that the phrase "filing of petitions for sales" in section 1380 may be held to apply to the report or return of sale required by section 1552. Such return must state the terms of the sale agreed on and the purposes for which the money is to be used. It may ask, that is, petition, for a hearing, or the hearing may be asked "by petition subsequently." The sale is not as yet complete and the return and petition, in substance and in fact, constitute a petition for the sale agreed on. Undoubtedly if the code had not previously contained other provisions relating to petitions for sale, section 1380 would be understood to apply to such return and petition for confirmation of the sale. We perceive no sound reason for refusing to give it that meaning with the code as it now stands. In the present case it was so construed and the personal service notice was given to the appellant accordingly.

Objection is made to the amended section 1559 giving the administrator authority to employ a real estate broker to negotiate a sale and to charge his commission to the estate. Previously the section required an order from the court to authorize the employment of such broker. We need not determine whether or not this objection is good. No broker was employed. The question is not presented, and as section 1559 is not an essential part of the procedure for the sale, its invalidity, as applied to pending administrations, would not affect the sale here involved.

[7] Section 1544, which was repealed, prohibited the administrator from selling real property upon a credit exceeding one year. Under the scheme of sale provided by the amended sections of 1919 no limit is placed upon the credit which may be given by the administrator upon a sale, except the discretion of the court, and no limit is placed upon that discretion. It is contended that this imposes an additional burden upon the heirs and therefore is inapplicable to cases pending at the time the amendment was enacted. Under the authority of *Murphy* v. *Farmers and Merchants*

*Bank, supra,* we think this enlargement of discretion as to the time of credit was within the power of the legislature and a mere incident of the power to sell property for the payment of debts. The appellant refers to other sections prescribing proceedings with relation to sales of land which has been devised by will. It is unnecessary to consider these sections. They do not apply to sales by the administrator and have no application to the present case.

[8] Appellant further contends that under section 3, providing that no part of the code "is retroactive, unless expressly so declared," these sections cannot be held to apply to proceedings pending at the time they were enacted, because of the fact that there is no express declaration that they shall so apply. It is not necessary to hold that the sections are retroactive. They are prospective in that they do not apply to proceedings already completed at the time they were enacted, but they do apply to all proceedings begun thereafter. That they were intended so to apply is obvious from the fact that at the same time, and as a part of the same scheme, the legislature repealed the sections which provided for the filing of the petitions for sale and orders of sale prior to the making of any sale by the administrator. Unless the scheme as changed by the amendments applies to pending administrations, there would be no mode provided for the sale of property thereunder. There can be no doubt that the legislative intent was that proceedings subsequent to the enactment of the amendments should be governed by the provisions therein contained.

The order is affirmed.

Angellotti, C. J., Lawlor, J., Wilbur, J., Olney, J., and Lennon, J., concurred.