[L. A. No. 14262. In Bank.—February 27, 1934.]

RAE MacARTHUR, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

J. D. Bauer for Petitioner.

Arthur I. Townsend, Everett A. Corten, Redman, Alexander & Bacon and R. P. Wisecarver for Respondents.

SHENK, J.—Petition for review and annulment of the order of the respondent commission which denied any compensation to the petitioner.

The petitioner claims compensation as a dependent widow of Glenn MacArthur, who met his death on April 1, 1932, at Wilmington, California, from injuries sustained while he was employed as a loftman by the respondent Raymond Concrete Pile Company. The respondent Employers' Liability Assurance Corporation, Ltd., was the employer's insurance carrier. The only issue in the case was whether the applicant was the widow of the deceased employee and entitled to compensation as a dependent.

The respondent commission made its finding that the deceased employee left no person dependent upon him for support, and denied any award to the applicant. The question for review is whether the commission has exceeded its powers in so finding on the record presented.

The applicant testified on the hearing before the commission that she was the wife of the decedent by a marriage which took place in Vancouver, B. C., on October 4, 1921, pursuant to an unwitnessed oral agreement between them. No marriage license was obtained nor any ceremony performed. The parties lived as husband and wife for about a year in British Columbia and then came to the United States. They lived at Seattle, San Francisco and Oakland, where they mingled with friends and relatives and held themselves out as husband and wife. They finally went to live in Wilmington, where the decedent's mother resided and where they were received, and continued to live, as husband and wife up to the time of the employee's death. During this time, a period of about eleven years, the decedent supported himself and the applicant from his earnings. The record shows without dispute that the applicant was maintained as a member of the decedent's household and was dependent upon him for support. The question is whether she was such a dependent as is entitled to receive compensation pursuant to the provisions of the Workmen's Compensation Act.

The answer must be found in section 14 of the act. (Stats. 1917, chap. 586, as amended Stats. 1919, chap. 471.) Section 14a (1) provides that a wife living with her husband at the time of the injury or for whose support he was legally liable at that·time shall be conclusively presumed to be wholly dependent upon him for support. Sections 14 (b) and (c) provide: "(b) In all other cases,

questions of entire or partial dependency and questions as to who constitute dependents and the extent of their dependency shall be determined in accordance with the fact, as the fact may be at the time of the injury of the employee. (c) No person shall be considered a dependent of any deceased employee unless in good faith a member of the family or household of such employee, or unless such person bears to such employee the relation of husband or wife. . . . ''

In *Temescal Rock Co.* v. *Industrial Acc. Com.*, 180 Cal. 637 [182 Pac. 447, 13 A. L. R. 683], where an award to the applicant was upheld, it was decided that a woman who in good faith believed that she was the lawfully wedded wife of the decedent was entitled to compensation as a dependent pursuant to subsection (b) as qualified by subsection (c). But the requirement of good faith to achieve this result depends upon some basis in fact upon which the woman was entitled to found her belief. In that case the contracting parties were ignorant Mexicans who obtained a license to marry and thereafter cohabited as husband and wife under the belief that they had been legally married.

Prior to the events in the present case hereinbefore related, the petitioner, in June, 1914, in British Columbia, was married by a minister to a man by the name of Meehan, after a license had been obtained. Subsequently she obtained a divorce in Tombstone, Arizona, from Meehan on grounds other than adultery. She returned to Canada, where presumably she met the decedent. At the time the petitioner and MacArthur were contemplating marriage they were informed by friends that they probably could not obtain a license because the law of Canada would not recognize a divorce on any ground except adultery and that such a marriage would therefore be bigamous. The petitioner and MacArthur were acquainted with another couple who had consummated their intention by living together as husband and wife without solemnization of the marriage ceremony. The petitioner and MacArthur then made the oral agreement referred to and from that time, October, 1921, lived together as husband and wife. The petitioner stated upon the hearing that at all times she honestly believed that she was lawfully living with the dece-

dent as his wife and that they had contracted a valid common-law marriage.

As pointed out in the case of *Temescal Rock Co.* v. *Industrial Acc. Com., supra,* in not every case wherein the applicant has entered into the marital relationship with the decedent without complying with the requirements of the law (sec. 68 ct seq., Civ. Code) will the test as to whether she is a dependent pursuant to the act apply in her favor. The essential element in each case is the good faith of the parties, which must be evidenced by a reasonable basis for the belief that they had complied with the laws of the country in which they assumed the relationship. In two cases since that decision, where the facts showed that the parties believed that they had solemnized a legal and binding marriage, the test necessary to determine the good faith of the parties was held to have been met. (*Louden* v. *Industrial Acc. Com.,* 105 Cal. App. 65 [286 Pac. 1045]; *Landsrath* v. *Industrial Acc. Com.,* 77 Cal. App. 509 [247 Pac. 227].)

In *Taylor* v. *Industrial Acc. Com.,* 131 Cal. App. 468 [21 Pac. (2d) 619], the court refused to annul an order of the commission denying compensation to the applicant based on a finding that she was not in good faith a member of the decedent's household. The court refused to extend the case of *Temescal Rock Co.* v. *Industrial Acc. Com., supra,* to facts which established that in California the applicant and decedent commenced living together; that when marriage was discussed, the decedent said they were just as good as married, "it is a state law"; and that she believed him and lived with him as his wife and they were considered as married by their friends and acquaintances. The showing on the present record is ruled by the statement in that case that if there is any evidence in the record to support the inferences drawn by the commission and upon which it has based its findings, those findings cannot be disturbed. ■ The commission, on the evidence presented here, could reasonably find that the applicant did not believe that she could contract a legal and binding marriage in Canada at the time she agreed to live with the decedent as his wife. The conclusion that the petitioner is not entitled to an award pursuant to the provisions of sub-

sections (b) and (c) of section 14 of the act is therefore supported by the record.

██  The commission, however, concedes that if the law of Canada at that time permitted marriage *per verba de praesenti*, followed by cohabitation, the applicant would be entitled to compensation under subdivision (a) 1 of section 14. (Civ. Code, sec. 63.) The evidence in the record as to what was the law of Canada at the time in question was submitted in a supplemental return to the writ of review. Evidence on this issue was not before the commission at the time it made its order herein, but was submitted upon a petition for rehearing before the commission, which was denied. The respondent commission requests that the supplemental record be reviewed on the present proceeding in this court in order to expedite a final disposition of the matter. Inasmuch as all parties appear to have acquiesced in the request by submitting a showing as to the law of Canada on the point involved, the question will be considered.

The evidence before us on this issue shows the following with reference to the state of the law of British Columbia in 1921. The Marriage Act in force at that time was R. S. B. C. 1911, chapter 151. Section 25 of that act provided: "In all matters relating to the mode of celebrating marriages or the validity thereof, and the qualifications of parties about to marry, and the consent of guardians and parents or any person whose consent is necessary to the validity of such marriage, the law of England shall prevail, subject always to the provisions of this act." The act extended the authority to perform the marriage ceremony to Protestant and other clergymen and to civil authorities, in addition to clergymen of the established church of England. The act does not specifically invalidate a marriage *per verba de praesenti*. By the operation of section 25, therefore, it would appear that whether such a marriage was valid in British Columbia will depend on the answer to the question whether under the law of England a marriage *per verba de praesenti* followed by cohabitation was recognized as valid.

In volume 19, American and English Encyclopedia of Law, at page 1192, it is stated: "It is now settled that there could be no valid marriage at common law in *England*

without the presence of a person in holy orders, that is, a clergyman of the established church.'' To support this statement are cited *Regina* v. *Millis,* 10 Cl. & F. 534; *Beamish* v. *Beamish,* 9 H. L. Cas. 274; *Catherwood* v. *Caslon,* 13 M. & W. 261; *Culling* v. *Culling* (1896), Prob.` 116. Informal marriages were considered valid under the common law of England prior to 1753. (19 Am. & Eng. Ency. of Law, pp. 1193, 1194.) In that year Lord Hardwicke's Act (26 Geo. II, chap. 33), regulated the license and solemnization of marriage in England. The case of *Regina* v. *Millis, supra,* 1843, reflects the spirited controversy which arose on the question whether under that act an informal marriage was valid. The question was determined adversely to its validity by the lower court and the result was left undisturbed on appeal by reason of an equally divided House of Lords. In a note discussing the case the same authority (19 Am. & Eng. Ency. of Law, p. 1194), states: ''The decision in this case has not been universally acquiesced in, and there has been a reluctance to follow it except on the principle *stare decisis.* (*Catterall* v. *Catterall,* 1 Rob. Ecc. 580, 11 Jur. 914, per Dr. Lushington; *Atty.-Gen.* v. *Windsor,* 6 Jur. N. S. 834, per Lord Campbell.) See also remark of Willes, J., in *Reg.* v. *Mainwaring,* 7 Cox. C. C. 196, and the opinion of the same judge in *Beamish* v. *Beamish,* 9 H. L. Cas. 274. . . . The courts of Canada have *disapproved* or refused to be bound by *Reg.* v. *Millis.* (*Doe* v. *Breakey,* 2 U. C. Q. B. 349; *Connolly* v. *Woolrich,* 11 L. C. Jur. 197.)''

The Marriage Act of 1823 (4 Geo. IV, chap. 76) repealed and superseded Lord Hardwicke's Act. This act and the Marriage Act of 1836 (6 and 7 Will. 4, chap. 85), rendered void a marriage not solemnized in accordance with their requirements. (16 Halsbury's Laws of England, p. 280, par. 516.) The record before us shows no change in the condition of the law of England at the time of the enactment of R. S. B. C. 1911, supra.

The petitioner is forced to concede that despite the criticisms of the decision in *Regina* v. *Millis,* that case established the law of England from the date of its decision, that is, that there must be a compliance with the marriage act in force. The petitioner contends, however, that the principle of that case was not adopted or recognized as part

of the common law of Canada. Counsel for the petitioner states: "When Canada was colonized, long prior to the decision of the Millis case, Canada took the common law as then recognized in England, and at that time the doctrine of the Dalrymple case (*Dalrymple* v. *Dalrymple*, 1811, 2 Hagg. Conn. Rep. 54), was fully established as the common law of England, and of necessity became the common law of Canada, and the Dalrymple case establishes the rule of the validity of common law marriages." Counsel relies on *Breakey* v. *Breakey*, 2 U. C. Q. B. 349; *Connolly* v. *Woolrich*, 11 L. C. Jurist 197, and 5 Law Quarterly Review, 57. He presents no case interpreting the statute of 1911 or determining what was the law applicable under section 25 of that act, whether the law of England as herein noted, or the common law adopted by other Canadian provinces. On the contrary he states that no case involving an attack upon such a marriage or deciding the validity thereof under the act of 1911 appears to have arisen. Nor is it shown what was the statutory law of other provinces alleged to have rejected the law of England following the case of *Regina* v. *Millis*.

The case of *Breakey* v. *Breakey, supra,* relied upon, involved the validity of a marriage which was solemnized publicly in Ireland about 1815 before a Presbyterian minister, who had either been removed or had resigned from his congregation, although he still continued to perform marriage ceremonies. The parties lived together in Ireland and England, and afterward emigrated to Canada. The decision in that case that the marriage was valid rested upon the conclusion that such marriages were legalized by the Imperial Statute 5 and 6 Vict., chapter 113. Although the cases of *Regina* v. *Millis* and *Dalrymple* v. *Dalrymple, supra,* were discussed, no conclusion as to the applicability of those cases was reached, inasmuch as it was thought that the Imperial Statute was determinative of the issue. We may assume that had a case involving similar facts arisen for decision in British Columbia the marriage would likewise have been held valid.

The case of *Connolly* v. *Woolrich, supra,* decided in 1867 by the superior court, District of Montreal, involved a marriage solemnized in 1803 in the Athabaska district of Canada in accordance with Indian tribal customs, between William

Connolly and a daughter of an Indian chief of the Cree nation. They lived together as husband and wife until 1832 in the Northwest country, in Lower Canada and Montreal, and had numerous children. The woman during that time was known as Mrs. Connolly. In 1832, while the parties with their family were in Montreal, a marriage by Connolly with a second cousin, Julia Woolrich, was solemnized according to law, and two children were born of that union, which lasted until 1849, when Connolly died. In that case it was concluded that the Athabaska region was beyond and without the chartered limits of the Hudson Bay Company. The opinion was also ventured, admitting that the region was within the chartered limits, that the charter applied only to those "who belonged to the company, or were living under them", and that Connolly was not a member of or living under the Hudson Bay Company. It was concluded that there was nothing which changed or abolished the customs of the Indians or the laws of the French settlers, or which introduced the English common law into that region; that the *lex loci* governed and the marriage was valid. The court indicated that if it were compelled to decide the case under the English common law it would not hold itself bound by the case of *Regina* v. *Millis*, but would regard the marriage as valid. In this respect it was noted that the region of Athabaska was barbarous country situated in the remote wilderness of northwestern America where there were no priests or ministers, and that even the law of England does not compel parties to do the impossible.

The Dalrymple case relied upon by the petitioner affirmed a marriage *per verba de praesenti* made in Scotland, where at that time so-called common-law marriages were valid. The cases submitted and herein cited recognize that the laws of England had no force beyond its boundaries. They were in force in America in the states and in the provinces when especially adopted as the law thereof, or when it could be said that they were brought there by the settlers. The court in the case of *Connolly* v. *Woolrich, supra,* noted that several of the states had recognized that a marriage without the intervention of a clergyman was a good marriage pursuant to the common law of England which the settlers there carried with them. What was decided later on in

*Regina* v. *Millis* never became the law except by legislative enactment.

The citation by the petitioner of 5 Law Quarterly Review, page 57, adds nothing helpful to the foregoing discussion.

The burden of proving the affirmative of the issue is upon the petitioner. (Sec. 19 (d), Workmen's Compensation Act, *supra*.) We may assume that under the statute of 1911 in force in British Columbia in 1921, without for the moment considering the effect of section 25 thereof, the courts of that province would adopt the common law claimed by the petitioner to be in force elsewhere in Canada. The petitioner also, however, shows that no case interpreting the statute as affected by section 25 thereof, or any similar statute, has been decided. The record before us cannot be said to support an interpretation of the statute contrary to its express provisions, viz., that with respect to the mode of celebrating marriages or the validity thereof the law of England shall prevail where not otherwise modified by the act. On the showing made it follows that a marriage which was not celebrated in accordance with the provisions of the act of 1911 and the law of England as shown by the record was invalid. This result is also in conformity with the law of California on the subject. Therefore, in the absence of any law in this state which would recognize the validity of such a marriage, and lacking any facts of remoteness from civilization which would support a showing of impossibility to comply with the statutory requirements enacted for British Columbia, we must conclude that the alleged marriage of the petitioner and MacArthur was invalid.

The foregoing answers all of the contentions required to be determined.

The order is affirmed.

Seawell, J., Thompson, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.