[Sac. 5688. In Bank. Mar. 31, 1948.]

Estate of ALFRED CARL KNUTZEN, Deceased. UNITED STATES OF AMERICA, Appellant, v. THEODORE J. KNUTZEN, as Administrator, etc., Respondent.

Herbert Wechsler, John F. Sonnett, David L. Bazelon, Assistant Attorneys General of the United States, Harry LeRoy Jones, Wallace H. Walker, M. S. Isenbergh, Special Assistants to the Attorney General, Frank J. Hennessy, United States Attorney, Thomas O'Hara, Emmet J. Seawell, Arthur J. De Lorimier, Assistant United States Attorneys, John Ernest Roe, Raoul Berger, General Counsel to the Alien Property Custodian, James D. Hill, David Schwartz, Chief Trial Attorneys, C. E. Rhetts, Acting Head, War Division, Richard P. Lott and David E. Feller for Appellant.

O. H. Speciale for Respondent.

Robert W. Kenny, Attorney General, and Everett W. Mattoon, Deputy Attorney General, as Amici Curiae on behalf of Respondent.

GIBSON, C. J.—The United States, as successor in interest of alien heirs, has appealed from a decree settling a final account and ordering distribution, and from an order denying a motion for a new trial and a motion to vacate the decree.

The problems presented concern the inheritance rights of non-resident aliens under sections 259, 259.1 and 259.2 of the Probate Code.

Section 259, as enacted in 1941, provided that the right of nonresident aliens to take real or personal property or the proceeds thereof by succession or testamentary disposition "is dependent in each case upon the existence of a reciprocal right upon the part of citizens of the United States to take real and personal property and the proceeds thereof upon the same terms and conditions as residents and citizens of the respective countries of which such aliens are inhabitants and citizens and upon the rights of citizens of the United States to receive by payment to them within the United States or its territories money originating from the estates of persons dying within such foreign countries." Section 259.1 then provided: "The burden shall be upon such nonresident aliens to establish the fact of existence of the reciprocal rights set forth in Section 259," and section 259.2 provided: "If such reciprocal rights are not found to exist and if no heirs other than such aliens are found eligible to take such property, the property shall be disposed of as escheated property."

In 1945 sections 259.1 and 259.2 were repealed and section 259 was amended by deleting the last clause relating to the right to receive payment and by adding a provision creating a presumption that such reciprocal rights exist. The sections were again changed in 1947, to read substantially as they did in 1941, so far as pertinent here; section 259 was amended by omitting the provision for a presumption, and sections 259.1 and 259.2 were reenacted in their original form.

Decedent, who died intestate on January 24, 1943, was a resident of this state, but the record and findings are silent as to his citizenship. He left surviving him respondent, a brother who resided in this state and was appointed administrator, and another brother and two sisters who were residents and nationals of Germany. The estate consisted of a small amount of cash and some real property which was sold for $1,500.

After the administrator filed his petition praying for distribution of the estate in equal shares to himself and his brother and sisters, the Alien Property Custodian issued an order declaring that the nonresident heirs were nationals of Germany, an enemy country, and purporting to vest in himself all their right, title, interest and claim in and to the estate. This order was filed in the probate proceeding, and thereafter, on hearing of the petition for distribution, the

court of its own motion invoked the provisions of sections 259 et seq., and ordered distribution to the administrator as sole heir. The United States then moved to vacate the decree and for a new trial. On denial of these motions the court modified its decree by striking out a finding that the alien heirs were entitled to have the estate distributed to them in equal shares, and by substituting findings that, but for the provisions of sections 259 et seq., the nonresident aliens would each take a one-fourth share of the estate, that no reciprocal rights existed between the United States and Germany, and that the alien heirs were not entitled to inherit any part of the estate.

The United States seeks a determination of the extent of the interests in the estate which vested in the Alien Property Custodian, and the first contention is that sections 259, 259.1 and 259.2, as enacted in 1941 and as applied by the probate court, are in conflict with and therefore inoperative as against the provisions of the 1925 treaty with Germany (44 Stats. 2132) and that those sections are invalid because they invade fields exclusively reserved for and occupied by the federal government.

These questions have been determined by the United States Supreme Court, during the pendency of this appeal, in *Clark* v. *Allen*, 331 U.S. 503 [67 S.Ct. 1431, 91 L.Ed. 1633, 170 A.L.R. 953]. In that case it was held that the rights secured by the 1925 treaty, *as to realty,* were in terms a right to sell within a specified time plus a right to withdraw the proceeds and an exemption from discriminatory taxation; that those rights extend to German heirs of "any person" holding realty in the United States, regardless of citizenship; and that the treaty provisions were not suspended or abrogated by the outbreak of war or by any action of the President or of Congress. It was further held that the national policy expressed in the Trading with the Enemy Act (40 Stats. 411, 50 U.S.C.A. App. § 1 et seq.) is not incompatible with the right of inheritance granted under the treaty; that the power to vest alien owned property in the custodian is discretionary and not mandatory; that the loss of inheritance by vesting is not inevitable and does not necessarily deprive the alien of all the benefits of his inheritance; and that the disposition of realty is governed by the treaty, and its provisions prevail over any conflicting provisions of California law.

As to *personalty,* it was held that the treaty refers only to the right of any *national* of one country to dispose of property in the other country, and that it does not cover personalty

located in this country which an American citizen undertakes to leave to German nationals. It was further held that sections 259-259.2, as enacted in 1941, were not unconstitutional as an extension of state power into a field of foreign affairs exclusively reserved to the federal government, and that California had not entered into the forbidden domain of negotiating with a foreign country or of making a compact with it contrary to article I, section 10, of the federal Constitution.

It follows from the decision in *Clark* v. *Allen, supra,* that the probate court erred in distributing all the estate to the resident heir and that the decree must be reversed. The nonresident alien heirs were entitled under the treaty to sell the realty and withdraw the proceeds, and it is immaterial that the property was sold by the administrator, apparently to get funds to pay debts and expenses, instead of by those heirs. In either event, they were entitled to share in the proceeds of the realty, and the Alien Property Custodian was entitled to claim their shares by reason of the vesting order.

■ The right of the alien heirs under the treaty to succeed to personalty depends on whether the decedent was a citizen of this country or a national of Germany. The record is silent in this respect, and we therefore cannot decide the question, but if the decedent was a national of Germany, the alien heirs were also entitled to share in the personalty.

■ The United States next contends that sections 259 et seq., are not self-executing and that, even if decedent was not a national of Germany, the alien heirs took at least defeasible interests in the personalty which were vested in the United States by action of the Alien Property Custodian and became indefeasible upon their acquisition by the custodian prior to any judgment of forfeiture or defeasance. This contention is based on the theory that the sections do not amount to a statute of succession and that alien heirs have an estate or interest which is valid until defeated by some judgment of forfeiture or defeasance. Early cases are cited to the effect that an alien acquired by succession an estate defeasible by the state and that, until office found [adjudication in special proceeding for forfeiture], the alien could pass a valid title to a nonalien grantee. (See *People ex rel., etc.* v. *Folsom,* 5 Cal. 373; *Ramires* v. *Kent,* 2 Cal. 558; *De Merle* v. *Mathews,* 26 Cal. 455; *Racouillat* v. *Sansevain,* 32 Cal. 376.) None of these cases involved a statute similar to section 259. The argument assumes that the aliens have certain existing rights and that

the statute merely provides for a forfeiture. This is not the effect of the statute. It is not, and does not purport to be, a. forfeiture statute; instead the clear purpose is to regulate succession by providing that a nonresident alien may not inherit unless reciprocal rights are granted to our citizens by the country of which the alien is a resident.

The right to succession is not an inherent or natural right, but one which exists only by statutory authority, and it is only by virtue of the statute that an heir is. entitled to receive any of his ancestor's estate. (*Estate of Perkins,* 21 Cal. 2d 561, 569 [134 P.2d 231]; *Estate of Watkinson,* 191 Cal. 591, 597 [217 P..1073]; *Irving Trust Co.* v. *Day,* 314 U.S. 556 [62 S.Ct. 398, 86 L.Ed. 452, 137 A.L.R. 1093]; *In re Wilmerding,* 117 Cal. 281, 284 [49 P. 181].) While section 259.2 as enacted in 1941, and as reenacted in 1947, provided for escheat if no heirs were found eligible to take the property, the primary purpose of the legislation was not to establish a procedure for escheat or for defeasance of any interest of nonresident aliens, but to place limitations and conditions on the right of such aliens to inherit. Hence the proper construction is that sections 259 et seq., are laws of succession, that they constitute limitations on the power of aliens to inherit and that nonresident aliens are made ineligible to inherit, and acquire no rights in the estate in the absence of reciprocal rights of American citizens to inherit property in the country in which such aliens are resident.

Moreover, the argument that defeasible interests became indefeasible, when acquired by the United States before any judgment of defeasance, assumes that there was merely an infirmity in title which was thereby cured. However, the only source of the Alien Property Custodian's rights is the estate or interest of the alien, and he acquires no greater rights or interest than those held by the alien. (See *Chemical Foundation, Inc.* v. *General Aniline Works, Inc.,* 99 F.2d 276, cert. den., 305 U.S. 654 [59 S.Ct. 249, 83 L.Ed. 423]; *Sutherland* v. *Selling,* 16 F.2d 865, cert. den., 273 U.S. 760 [47 S.Ct. 475, 71 L.Ed. 878].) Hence the vesting order cannot be said to have created rights or interests which did not theretofore exist.

It is also contended by the United States that, even if the nonresident aliens are not granted inheritance rights by the treaty, as. will be the case as to the personalty if it is found that decedent was an American citizen, such aliens may inherit if, in fact, the laws of Germany granted reciprocal

inheritance rights to American citizens. On the other hand, it is claimed that the treaty is the sole test of the existence of such rights and that they can be created and controlled only by treaty. It is asserted that local laws and foreign municipal laws cannot establish or control reciprocal rights of inheritance between citizens or nationals of the respective countries, that our states cannot sustain any relations with foreign countries, and that the words ''reciprocal rights,'' as used in sections 259 et seq., mean rights established by treaty.

The statute, however, does not refer to treaties, and there is nothing in its wording which requires the construction that ''reciprocal rights'' include only those established by treaty. Such a construction would defeat the obvious purpose of the statute which was to permit a nonresident alien to inherit when the laws of his country would permit an American citizen to inherit under the same circumstances. ■ Evidence of the foreign domestic law is therefore admissible to prove the existence of reciprocal inheritance rights. (Cf., *Estate of Blak*, 65 Cal.App.2d 232, 236 [150 P.2d 567] ; *In re Nielsen's Estate*, — Mont. — [165 P.2d 792].)

■ Finally, it is contended that it is presumed, in the absence of proof, that the law of a foreign country is the same as that of California and that here there was no proof of the foreign law. (See *Wickersham* v. *Johnston*, 104 Cal. 407 [38 P. 89, 43 Am.St.Rep. 118] ; *Murphy* v. *Murphy*, 145 Cal. 482 [78 P. 1053], and *Christ* v. *Superior Court*, 211 Cal. 593 [296 P. 612].) This rule, however, does not apply in view of the express provision of section 259.1, both as enacted in 1941 and as reenacted in 1947, that the burden is on the nonresident alien to establish the existence of reciprocal rights.

The decree settling the final account and directing distribution is reversed. The appeal from the order denying a new trial and denying a motion to vacate the decree, having been rendered moot, is dismissed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.