[Civ. No. 3596.  Fourth Dist.  May 21, 1948.]

Estate of GIORGIO NATALIE GIORDANO, Deceased. TOM C. CLARK, Attorney General of the United States, Appellant, v. ANNA MARIA FINO, Respondent.

David L. Bazelon, Assistant Attorney General, James M. Carter, United States Attorney, Clyde C. Downing, Assistant United States Attorney, M. S. Isenbergh, Special Assistant to the Attorney General, and David E. Feller for Appellant.

H. E. Dwelle, Dorsey K. Dwelle, J. George Aye, Jr., and James W. Shipe for Respondent.

MARKS, J.—A rehearing was granted by the court on its own motion to consider the bearing on this case of *Estate of*

*Knutzen,* 31 Cal.2d 573 [191 P.2d 747], and *Estate of Bevi-lacqua,* 31 Cal.2d 580 [191 P.2d 752]. While these cases were decided prior to our decision in the instant case we did not receive copies of those decisions until after our opinion was filed.

This is an appeal by the Attorney General of the United States, as substituted successor of the Alien Property Custodian, from a decree of distribution, distributing all of the property of the estate of Giorgio Giordano, who died intestate Jan. 17, 1945, to Anna Maria Fino, his sister who is a citizen of the United States residing in California, to the exclusion of Maria Giordano, his mother, who at all material times was an alien residing in Italy.

It is not questioned that the Alien Property Custodian, under federal statutes and under a vesting order made on November 2, 1945, has properly appeared in these proceedings as successor to any interest of Maria Giordano in the property of the estate and has requested that the interest of the mother be vested in him on distribution.

There were several brothers and sisters of deceased who were aliens, living in Italy, but as he died intestate, without surviving father, spouse, or issue, it is not necessary to mention them further, as the mother, had she been a resident of the United States, would have been his sole heir at law, entitled to inherit his property. (Prob. Code, § 225.)

The case turns on the effect to be given sections 259, 259.1 and 259.2 of the Probate Code (Stats. 1941, ch. 895) which remained in effect until September 15, 1945, when section 259 was amended and the other sections were repealed. (Stats. 1945, ch. 1160.) Section 259 was again amended and the other two sections were reenacted so that the amended section and the reenacted sections went into effect on September 19, 1947, (Stats. 1947, ch. 1042) in much the same form as they were prior to the 1945 changes.

Section 259.2 has no important bearing on this case so no further attention need be given it. The two other sections, as originally enacted, provided as follows:

"§ 259. The rights of aliens not residing within the United States or its territories to take either real or personal property or the proceeds thereof in this State by succession or testamentary disposition, upon the same terms and conditions as residents and citizens of the United States is dependent in each case upon the existence of a reciprocal right upon the

part of citizens of the United States to take real and personal property and the proceeds thereof upon the same terms and conditions as residents and citizens of the respective countries of which such aliens are inhabitants and citizens and upon the rights of citizens of the United States to receive by payment to them within the United States or its territories money originating from the estates of persons dying within such foreign countries.''

"§ 259.1. The burden shall be upon such non-resident aliens to establish the fact of existence of the reciprocal rights set forth in Section 259.''

The important portion of the 1945 amendment of section 259 reads as follows:

"It shall be presumed that such reciprocal rights exist and this presumption shall be conclusive unless prior to the hearing on any petition for distribution of all or a portion of such property to an alien heir, devisee or legatees not residing within the United States or its territories a petition is filed by any person interested in the estate requesting the court to find that either one or both of such reciprocal rights does not or do not exist as to the country of which such alien heir, devisee or legatee is resident. Upon the hearing of such petition the burden of establishing the nonexistence of such reciprocal right or rights shall be upon the petitioner. Notice of such hearing shall be given in the manner provided by Section 1200 of this Code.''

It thus appears that at the time of the death of the deceased, and up to September 15, 1945, the burden of proving such reciprocal rights rested on the foreign alien heir, or in this case, the Alien Property Custodian who represented her. Commencing on September 15, 1945, and to September 19, 1947, the burden of proof rested on Anna Maria Fino. The enactments effective on September 19, 1947, returned the burden of proving reciprocal rights to the foreign heir, or, here, the Alien Property Custodian. In the court below neither of the parties established such reciprocal rights.

Deceased died on January 17, 1945, during the time the sections in their original form were in effect. The administratrix qualified on February 6, 1945. The final account and petition for distribution were filed on October 27, 1945, after the 1945 amendment, and the repeal of section 259.1 became effective. The decree of distribution distributing the property of the estate to Anna Maria Fino was filed on No-

vember 1, 1946. The transcript on appeal was filed on July 10, 1947. The 1947 amendment of section 259, and the re-enactment of section 259.1 of the Probate Code, became effective while this appeal was pending and before its decision.

Certain of the arguments of respondent in support of the decree of distribution may be summarized as follows:

That under both the civil law and the common law, aliens could not take property by descent or operation of law; that under the provisions of section 671 of the Civil Code, "Any person, whether citizen or alien, may take, hold, and dispose of property, real or personal, within this State;" that under sections 259 and 259.1 of the Probate Code as in force at the time of the death of deceased, Anna Maria Fino would take the entire estate unless appellant, as the representative of Maria Giordano, the nonresident alien, was successful in sustaining the burden of proving reciprocal rights of inheritance in Italy; that heirs at law of a deceased are determined by conditions existing at the time of death, and the rights of those heirs are then fixed and become vested at that time and may not be divested by subsequent legislative enactment, citing *Estate of Benvenuto,* 183 Cal. 382 [191 P. 678]; *Estate of Michels,* 18 Cal.App.2d 201 [63 P.2d 333], and *Johns* v. *Scobie,* 12 Cal.2d 618 [86 P.2d 820, 121 A.L.R. 1404]; *Estate of Putnam,* 219 Cal. 608 [28 P.2d 27]; *McKay* v. *Lauriston,* 204 Cal. 557 [269 P. 519]; *Estate of Phillips,* 203 Cal. 106 [263 P. 1017], and *Estate of Wellings,* 197 Cal. 189 [240 P. 21].

These arguments may be summarized by stating that it was the contention of respondent that as the inheritance from her brother vested in her under the law in force at the time of his death, and there being no evidence of reciprocal rights of inheritance in Italy, this property could not be taken from her by the Legislature acting after the vesting; that as the amendment of 1945 would have the effect of depriving her of property, title to which had already vested in her, it cannot be given force and effect in this case. The sum total of these arguments is that the amendments destroyed a vested right in property and were therefore changes in the substantive law and not merely changes in procedure. *Estate of Thramm,* 80 Cal.App.2d 756 [183 P.2d 97], supports this argument.

Appellant concedes that if the 1945 enactment is a change in the substantive law, and if given effect here, it would de-

prive respondent of property that had already vested in her, it cannot be given any force as it must be applied prospectively as affecting rights in property arising after its effective date. However, he argues that as the 1945 enactment became effective before the final account and petition for distribution were filed, and as the only change important here was to shift the burden of proof from one party to the other, it changed only the procedure and must be given effect in the hearing subsequently had on the petition for distribution and as respondent failed to meet the burden of proof placed on her by the 1945 statute, the presumption in appellant's favor therein contained became conclusive and the degree of distribution made contrary to that presumption must be reversed. (*Sour* v. *Superior Court*, 1 Cal.2d 542 [36 P.2d 373] ; *Heron* v. *Bray*, 122 Cal.App. 79 [9 P.2d 513].) He argues, and correctly so, that no litigant has any vested right in any matter of procedure, and that the fact that a change in procedure may make proof of the rights of one party more difficult, or proof by another party less onerous, can be of no avail to either. (*San Bernardino County* v. *Industrial Acc. Com*, 217 Cal. 618 [20 P.2d 673] ; *Arques* v. *National Superior Co.*, 67 Cal.App.2d 763 [155 P.2d 643].) Appellant points to decisions in which it has been held that changes in a statute regulating the burden of proof are to be applied as changes in procedure only. (*MacArthur* v. *Industrial Acc. Com.*, 220 Cal. 142 [29 P.2d 846] ; *Sackheim* v. *Pigueron*, 215 N.Y. 62 [109 N.E. 109] ; *Southern Indiana Ry. Co.* v. *Peyton*, 157 Ind. 690 [61 N.E. 722] ; *Wallace* v. *Western N. C. R. R. Co.*, 104 N.C. 442 [10 S.E. 552] ; *Easterling Lumber Co.* v. *Pierce*, 106 Miss. 672 [64 S.E. 461] ; 235 U.S. 380 [35 S.Ct. 133, 59 L.Ed. 279].)

■ The main issue of dispute between the parties is settled in the cases of *Estate of Knutzen, supra,* and *Estate of Bevilacqua, supra.* These cases hold that the sections under consideration are not merely procedural but rather are statutes regulating succession.

In *Estate of Knutzen, supra.* it is said:

"It is not, and does not purport to be, a forfeiture statute; instead the clear purpose is to regulate succession by providing that a nonresident alien may not inherit unless reciprocal rights are granted to our citizens by the country of which the alien is a resident.

"The right to succession is not an inherent or natural right, but one which exists only by statutory authority, and it is only by virtue of the statute that an heir is entitled to receive any of his ancestor's estate. (Citing cases.) While section 259.2 as enacted in 1941, and as reenacted in 1947, provided for escheat if no heirs were found eligible to take the property, the primary purpose of the legislation was not to establish a procedure for escheat or for defeasance of any interest of nonresident aliens, but to place limitations and conditions on the right of such aliens to inherit. Hence the proper construction is that sections 259 et seq., are laws of succession, that they constitute limitations on the power of aliens to inherit and that nonresident aliens are made ineligible to inherit, and acquire no rights in the estate in the absence of reciprocal rights of American citizens to inherit property in the country in which such aliens are resident."

In *Estate of Bevilacqua, supra,* it is said:

"On the contrary, it is plain that the statute is one of succession and that sections 259 and 259.1 apply in any proceeding where the right to inherit is at issue."

In the same case it is also stated:

"There is nothing arbitrary in the provision placing the burden of proof on the nonresident aliens who, presumably, are in a better position than residents to obtain information concerning foreign law. Moreover, there is no basis for complaint, at least insofar as this proceeding is concerned, in the argument that the statute places the burden of proof on nonresidents who are forbidden, by the Trading with the Enemy Act (40 Stats. 411; 50 U.S.C.A. App. § 1 et seq.), to prosecute any action in law or equity. The Alien Property Custodian is given full authority to succeed to their interests and to take such action as may be necessary to enforce and protect their rights. . . .

"Appellant, nevertheless, had already established a prima facie case showing a right to letters when he testified that decedent's wife and children were all aliens residing in Italy, and that he was a first cousin and the only relative of decedent in the United States. Under sections 259 et seq., he was entitled to rely on the fact that the burden of proving reciprocal inheritance rights was on the nonresident aliens."

Title to property of a decedent's estate passes on death to the heir or devisee. (Prob. Code, § 300.) As said in *Estate of Yorba,* 176 Cal. 166 [167 P. 854]:

"Under our system of law, the property of a decedent passes, upon his death, to his heirs or devisees. They take at once by inheritance, or by the terms of the will. Their title does not originate in the decree of distribution, although such decree, when it has become final, constitutes a muniment of title which will prevail over contrary provisions of the will or of the statutes of descent." (See, also, *Estate of Benvenuto, supra; McKay* v. *Lauriston, supra; Estate of Putnam, supra.*)

In *Estate of Patterson,* 155 Cal. 626 [102 P. 941, 132 Am. St.Rep. 116, 18 Ann.Cas. 625, 26 L.R.A.N.S. 654], it was said:

"There can be no doubt of the rule that if the estate once vested in the heirs the legislature had no power thereafter by a subsequent law to divest it."

In a supplemental brief appellant argues that if section 259 be conceded to be substantive in nature, still section 259.1 establishing the burden of proof, is only procedural and thus being a separate section may be amended without affecting vested rights. This argument is contrary to the holdings in *Estate of Knutzen, supra,* and *Estate of Bevilacqua, supra,* from which we have already quoted, where both sections are said to be part of the substantive law of succession.

■ It being now established that the three sections of the Probate Code were not merely procedural in nature but were parts of the substantive law of succession, it follows that the statute in effect at the time of the death of deceased must control, as the property of the deceased vested in his heir at that time and could not be divested by subsequent legislative enactment. (*Estate of Wellings, supra; Estate of Arms,* 186 Cal. 554 [199 P. 1053].) ■ As the provisions in effect at that time placed the burden of proving reciprocal rights of inheritance on appellant, and as he failed to maintain that burden of proof, respondent was entitled to rely on the provisions of the sections and under them the trial court was required to distribute the property to the resident heir at law to the exclusion of the alien nonresident heir or her representative.

In oral argument the appellant suggested that if the judgment were reversed and a new trial had he might be able to prove that, under the laws of Italy, reciprocal rights of inheritance existed. No request has been made here to take additional evidence and we must decide the case on the record as we find it.

It was also suggested by appellant that the judgment must be reversed because there is no direct finding to the effect that there are no reciprocal rights of inheritance in Italy. The trial court did find the substance of the code sections as they existed at the time of the death. In the conclusions of law appear the statements that the three code sections are laws of succession and that there was no proof offered by appellant that reciprocal rights of inheritance existed in Italy. This is sufficient to invoke the inference that no such reciprocal rights existed which supports the judgment. (See, also, *Madera Sugar Pine Co.* v. *Adams,* 68 Cal.App. 111 [228 P. 544].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.