[Civ. No. 14212.   First Dist., Div. Two.   Jan. 10, 1950.]

Estate of EDWARD R. BRADY, Deceased.   EMMA L. COBBY, Appellant, v. RUSSELL B. ADAMS et al., Respondents.

Joseph A. Brown for Appellant.

George M. Naus for Respondents.

NOURSE, P. J.—This cause was before us on a prior appeal (*Estate of Brady*, 83 *(Cal.App.) [188 P.2d 531]). Following a transfer to the Supreme Court it was discovered that the appeal had been taken from a nonappealable order and the appeal was dismissed. On the return of the remittitur to the superior court, proposed findings were prepared by counsel for respondent and served on appellant. Thereafter the parties appeared before the judge of the superior court for the settlement and signing of the proposed findings, and the proposed order refusing probate of will. Prior thereto counsel for appellant filed an unverified objection to the proposed findings and order stating that "we now desire to introduce further and additional evidence and object to the making of an order until there has been a further hearing and the introduction of evidence." No further indication was made either in writing or orally as to what additional evidence appellant desired to produce, no reason was given why such evidence was not offered during the earlier stages of the trial, and no offer of proof of additional facts was made.

Upon the conclusion of this hearing the trial court entered the following findings and order:

## "FINDINGS

"1. The alleged will sought by said petitioner to be admitted to probate was not in existence at the time of the death of said Edward R. Brady, deceased.

"2. Said petitioner has not proved the provisions of any will, either clearly, distinctly, or at all, by two credible witnesses, or at all.

"The Court concludes that the probate prayed by petitioner should be refused.

## "ORDER

"IT IS ORDERED, that the probate of will prayed by petitioner Emma L. Cobby be, and it hereby is, refused, and that appointment of an administrator with the will annexed be, and it hereby is refused.

"Dated February 18th, 1949."

---

*A hearing was granted by the Supreme Court on March 18, 1948. The final opinion of that court is reported in 32 Cal.2d 478.

It should be noted that appellant had from October 6, 1948, to February 18, 1949, to perfect the request to take additional evidence or to make other objections to the manner of proceeding.

■ Before considering the appeal on the merits it is well to consider the matter of procedure. The dismissal of the former appeal left the case with the superior court just as it stood on the date the abortive appeal was taken. All during the pendency of that appeal the superior court had full jurisdiction of the cause and could have at any time made the findings and entered judgment. (*Brady* v. *Burke,* 90 Cal. 1, 4 [27 P. 52] ; *People* v. *Adamson,* 33 Cal.2d 286 [201 P.2d 537].) The cause was at all times open, just like a cause which has been tried and submitted for decision. ■ If we understand appellant's complaint to be that too much time elapsed between the hearing of evidence and the entry of findings, it must be apparent that such delay was caused solely by appellant's unauthorized appeal. She may not therefore complain that the findings were not made within the time designated in the statute. (Code Civ. Proc., § 632.)

Appellant states that it is unnecessary to discuss the question whether there should have been a trial de novo. She also states that any additional evidence which the parties desired to present should have been received. We do not agree with either statement. If a trial de novo was necessary the order must be reversed. Since the point is not urged we refrain from deciding it.

■ As to the right to reopen a case to produce additional evidence the law is clear. The application must be supported by affidavit or other evidence justifying the failure to offer the evidence during the trial. (24 Cal.Jur. 771.)

■ The real issue on this appeal is whether the evidence supports the finding that petitioner failed to prove the existence, or the provisions of any will "clearly and distinctly . . . by at least two credible witnesses" as required by section 350 of the Probate Code.

Edward R. Brady died in San Francisco in February, 1933. His wife had predeceased him but he left a son, Edward T. Brady, and a stepson, Russell B. Adams. The latter and one Biggins, a trusted employee of deceased, were appointed administrators on a showing of intestacy. Final distribution and discharge were had in 1934, and the estate was closed in

that year. The petition under review was filed 12 years after distribution.

Petitioner, Emma L. Cobby, is a sister of deceased. Her first petition, filed on January 25, 1946, independently under No. 101995, alleges in part that Russell Adams on or about February 11, 1933, came into possession of the last will and testament of deceased, that petitioner and three others were beneficiaries under that will and that Adams suppressed the will; with prayer that he be required to produce that will, that it be admitted to probate and petitioner be appointed administratrix. Adams demurred. No disposition of this demurrer is on record. Shortly after this on February 13, 1946, petitioner filed a new petition in the old probate proceedings with the same allegations and prayer as in the former petition adding that the substance of the will is that it gives to petitioner and the sister Loretta Ellen Brady each $100 per month for life and to the sister Mary L. Hyde $150 per month for life, the residue to the son Edward T. Brady.

The evidence in substance was as follows: A Miss Kerrigan testified that for 19½ years she had been secretary of the corporation Eureka Boiler Works, of which concern deceased was superintendent. She went over many wills, maybe eight or ten, with deceased which he had written in pencil, usually on yellow lined notepaper. Some of them were dated but they were not signed. They were all in his handwriting. His signature was at the beginning of them, "I, Edward R. Brady." His three sisters were always remembered. When Mr. Brady died all papers and money were turned over to Mr. William Metson, who was attorney for the Eureka Boiler Works and attorney for the estate. The morning of the death three or four, and in the following months at least four more, of these unsigned wills were found and turned over to Mr. Metson. Deceased wrote such wills from 1925 to 1933. Some he tore up. Some of these unsigned wills were in the books of the boiler works in which Mr. Brady figured jobs, in different books he worked on, or "they cropped up at different places." There were 12 on lined yellow tablet sheets. They were not dated. Later Mr. Biggins found a signed will in the upper office and brought it down to witness. That was around July or August, 1933. It was on yellow paper; it was dated with month, day and year. It was dated 1916. *It was one sheet* dated at top and signed at bottom. They showed it to the witness DeRosa. The following morning they turned it over to Mr. Adams. Mr. Adams said he would take it to Mr. Metson.

*Mrs. Gertrude Brady* (wife of deceased) was the *heir to that will,* and his three sisters were in the will. She did not copy it but remembers it. Ralph Myers was appointed executor in it. Deceased's wife was to be his sole heir. *He did not mention his son nor Russell Adams in it.* The three sisters were left different monthly amounts, $50 and $75. The witness turned in her resignation to Mr. Adams in 1936 because Biggins who had been with the firm for 40 years was made to leave. Mr. Biggins died three years before the trial. When she heard that Loretta Hyde, a niece of petitioner, was sick and needed help, she asked, ''Why don't they go after Russell Adams and Eddy Brady,'' and told that deceased left a will. That was in 1937. At that time Mr. Metson gave her various papers regarding the estate, some 30 or 35, which she later gave to petitioner. Among them was one of the unsigned wills that was not dated; it set up a trust fund.

Comment on this testimony. If Mrs. Gertrude Brady ''was to be his sole heir'' and the son was not mentioned, the death of the wife prior to the death of the testator would leave the son as the sole heir under section 90 of the Probate Code unless the provisions of section 91 obtain, an exception which must be proved by competent proof. If the three sisters were left monthly payments of $50 or $75 each the· witness must have been testifying about one of the other unsigned wills which she had read.

Lawrence A. DeRosa, certified accountant who used to audit the books of Eureka Boiler Works, was shown a document on yellow paper by Miss Kerrigan and Mr. Biggins. It was dated May or June, 1916, with a date he does not remember. It had a date at the top and deceased's signature at bottom. It was all written in deceased's handwriting. *He saw two sheets of it,* the first initialed, the second signed; the second was only half full; the top of both sheets were dated. He glanced through it; read about one-fourth. It said *deceased's sisters and his son and stepson* should be his heirs, the estate to be divided, as shown below. He does not remember that deceased's wife was mentioned although she died many years later, but there were two or three more involved in it of which *the wife might have been one. He knows that the son and stepson were in.* In 1940, Mr. Metson told him he had never received it from Mr. Adams, nothing but the original papers turned over. Comment on this testimony. The witness said too much. When shown the paper found in 1933 he ''just

glanced at it.'' Thirteen years later he testified, giving a detailed account of the provisions of the alleged will including the names of all the devisees, the amounts left to each and the terms and conditions of a complicated testamentary trust. He was positive that Mrs. Cobby was one of the devisees. But there was no Mrs. Cobby when the will was alleged to have been executed. Deceased's sister, Mrs. French, became Mrs. Cobby 10 years later in 1926. He thought there were eight or nine heirs but couldn't say whether the will mentioned the wife. He was just as positive that the will consisted of two pages as the former witness was that it consisted of one page.

It should be observed that it would have been almost impossible for any man to write in one page or two a will containing all the trust provisions which these two witnesses outlined, and which are alleged in the petition, and which form the sole base upon which appellants now seek to support the allegations of a continuing trusteeship.

Russell B. Adams, a stepson, testified that shortly after the death of Brady, Mr. Biggins and Miss Kerrigan informed him that they had found a will and handed a paper to him. He told them he would take it to Mr. Metson. It was written in the form of a will in deceased's handwriting on a yellow piece of paper. It had no date according to his recollection. It was written in pencil; it named some sisters and gave them, he thinks, the same proportion as in certain notes written by deceased. The *son of deceased was principal beneficiary.* Adams himself was given $150 a month. It did not name an executor. He gave it to Mr. Metson one hour after he received it.

Esther H. Orr, secretary of Mr. William Metson at the time of the administration of the Brady estate, had all of the Brady papers except a few that were in the safe. There were numerous unsigned drafts. *None was signed.* She does not remember whether any was dated. Edward T. Brady, son of deceased, was the only heir at law. She never heard of a signed will of deceased.

On April 4, 1946, the trial court made an order in the old estate matter, No. 63691, ordering that attorneys of both parties should have access to the papers left by Mr. Metson and then under control of Mrs. Jafet Lindberg and P. H. McCarthy, attorney. On July 1, 1946, the attorneys declared that the search had uncovered nothing and submitted the matter.

On this evidence the trial court was asked to determine whether the provisions of the alleged will were "clearly and distinctly proved by at least two credible witnesses." On this issue the trier of facts had this conflicting situation: One witness testified that the supposed will was in one sheet; another testified it was in two; one witness testified that the wife was "his sole heir" and that the son and Adams were not mentioned; another witness testified that the son and stepson (Adams) were made the heirs with the sisters of deceased, but did not recall that the wife was mentioned in it. Another witness testified that the document referred to by these witnesses was by him handed to Mr. Metson, that it bore no date, that it made the son the principal heir and gave Adams $150 a month. This witness did not testify that the document was signed by deceased. This evidence is not of the type which would justify a reviewing court in setting aside the finding. The only witnesses who testified that they saw a *signed* will contradicted each other on so many essential points that they appear to have been speaking about two different documents.

We see no error in the trial court's finding. Appellant's witnesses were not only discredited by their own testimony, but by their obvious interest in the outcome of the proceeding and the hopeless conflict in their recital of the "provisions" of the will. ■ It was for the trial court to determine the credibility of the witnesses and to resolve those conflicts. Such determination is conclusive on appeal. *Blank* v. *Coffin,* 20 Cal.2d 457, 461 [126 P.2d 868]; *Hicks* v. *Reis,* 21 Cal.2d 654, 659 [134 P.2d 788]; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689]. It would serve no useful purpose for this court to discuss appellant's criticism of the rule of these cases in the light of authorities from other jurisdictions, or to attempt to reconcile the seeming confusion of thought noted particularly in *Estate of Bristol, supra.* It is sufficient for this court to say that the rule of decision in this state now is that when a finding is supported by some substantial and credible evidence it is binding upon the reviewing court.

Judgment affirmed.

Dooling, J., concurred.

A petition for a rehearing was denied February 9, 1950, and appellant's petition for a hearing by the Supreme Court was denied March 6, 1950.