[Civ. No. 5373.   Fourth Dist.   Apr. 2, 1957.]

Estate of ELIZABETH B. ROUSE, Deceased.   LEWIS E. ROUSE, Individually and as Administrator With the Will Annexed, Appellants, v. NORVELL B. UNDERWOOD et al., Respondents.

William H. Haupt for Appellants.

Conron, Heard & James, Wayne M. Hamilton and Baker, Palmer, Wall & Raymond for Respondents.

BARNARD, P. J.—This is an appeal from an order denying a motion to vacate and set aside an order settling a final account and a decree of distribution.

Elizabeth B. Rouse and Lewis E. Rouse were married in 1918 and lived together until Mrs. Rouse died, on April 25, 1954. They had no children, and Mrs. Rouse was a school teacher. She left a holographic will in which, after stating that "I desire to make a statement about all of my wordly possessions," she gave all of her furniture and personal belongings to her sister Norvell B. Underwood and her niece Elizabeth Jane White. She then stated that her husband had purchased "the stove & radio," and that he might have "my engagement diamond." The husband was appointed administrator with the will annexed on May 24, 1954.

The home of the parties was held in joint tenancy, and that property is not here involved. Aside from a long itemized list of household furniture, dishes, silverware, bedding, pictures and the like, the property involved consists largely of a building and its furnishings situated on a leased lot in a church conference grounds; the proceeds from certain life insurance policies; and the proceeds of a death fund under the teachers' retirement system. The deceased had taken out certain life insurance policies totaling about $7,500, in which the sister and niece were named as sole beneficiaries. The amount due from the death fund in the teachers' retirement system, amounting to $6,500, was payable in its entirety to the sister and niece, who had been designated as beneficiaries thereunder.

The sister and niece filed a request for notice of all proceed-

ings in the estate, and a dispute arose between them and Mr. Rouse over what each was entitled to. The insurance companies would not pay on the policies until it was determined who was entitled to receive the money. Mr. Rouse employed the same attorneys who represented him as administrator, for a contingent fee, to obtain for him his community interest in the proceeds of the insurance policies and from the retirement system funds. He then brought an action in the superior court naming the sister and niece, the insurance companies, and the state teachers' retirement system as defendants. The complaint alleged that all payments of premiums and all contributions of salary to the teachers' fund were community property, and that one-half of the sums payable from these sources belonged to him. Negotiations for a settlement of the controversy continued for several months, a number of conferences being held between the parties and their attorneys. A written agreement signed by Mr. Rouse as first party and the sister and niece as second party, and also by their attorneys, was executed under date of November 2, 1954. This agreement stated that Mr. Rouse claimed a community interest in the property left by Mrs. Rouse, including that mentioned in the will and the proceeds of the insurance policies and the retirement fund, and that the parties desired to amicably settle their respective rights with respect to all of said property. This agreement provided that one-half of the proceeds of the insurance policies and the retirement fund should be paid to Mr. Rouse, and the other half to the sister and niece; that the proceeds of the building and furnishings on the conference grounds should be divided between them in the same manner; that certain other items should be similarly divided between the parties; and that certain articles of furniture and the like should go to each party, respectively, with an allowance to the other party for one-half of the value thereof in accordance with a list which was attached thereto. It was also agreed that each party would pay one-half of the costs of administration of the estate, that each party would sign any instrument and perform any acts necessary to carry out the agreement, and that a petition would be filed in the probate court for an order distributing the property in accordance with this agreement.

The parties and their attorneys also signed a stipulation dated November 25, 1954, entitled in the action which had been brought by the husband in the superior court. It was thereby stipulated that the proceeds of one life insurance

policy should be paid one-half to the appellant and the remaining one-half to the sister; that the proceeds from the other life insurance policies and the teachers' retirement system should be paid one-half to the appellant and the other half to the sister and the niece; that the checks for these payments should be delivered to the attorneys for the parties, respectively; that upon such payment the action in the superior court should be dismissed as to all defendants with prejudice; that the payments so made should be deposited in a bank, to be withdrawn only on the orders of the attorneys for both parties; and that upon such withdrawal the proceeds should be distributed by those attorneys in accordance with the written agreement entered into by the parties under date of November 2, 1954. The monies were paid by the insurance companies and the teachers' retirement system, but Mr. Rouse did not file this stipulation in the action pending in the superior court and did not dismiss that action. Insofar as this agreement of November 2, 1954, called for the delivery of articles in kind that agreement was fully executed on or before December 10, 1954.

On September 7, 1955, Mr. Rouse, as administrator of this estate, filed his first and final account and petition for distribution. In addition to the usual things it was therein alleged that a dispute had arisen between the surviving husband and the sister and niece, because of the fact that the furniture and certain personal belongings were community property of the decedent and the surviving husband; that the premiums on the life insurance policies, and the amounts paid into the teachers' retirement system fund, were paid with community funds, but the decedent had named her sister and niece as beneficiaries of said policies and of said retirement fund; that a suit had been filed in the superior court by the surviving husband to recover for himself his community one-half interest in said policies and said fund; that said suit was compromised by a stipulation between the parties under which the surviving husband is to receive his community half interest in said policies and fund; and that an agreement had been made between the parties with respect to the division of property belonging to the decedent and compromising the surviving husband's claim to a community one-half interest therein, and providing that the expenses of administration should be shared equally. The agreement between the parties dated November 2, 1954, was attached to the petition for distribution, and it was prayed that the first and final account

be settled and allowed and that the property be distributed as set forth in that agreement and in the petition for distribution.

The matter came on regularly for hearing and a decree was entered on October 6, 1955, settling and allowing the account and ordering all of the property of the estate, including the proceeds of the life insurance policies and the retirement fund, distributed in accordance with the agreement of the parties and the petition for distribution. The effect of the decree was to give one-half of everything to the surviving husband and the other half to the sister and niece, except as this was varied by the agreement providing that each party should take certain articles of furniture and pay one-half of the value thereof to the other. The decree further found that all of the property of the decedent was community property; that a dispute had arisen between the surviving husband and the sister and niece; and that they had entered into an agreement under which the property ought to be distributed in a certain manner. The property was distributed in that manner, and as prayed for in the petition. The decree further provided that all other property of every kind and nature and wherever situated, and not described or not now known or discovered, was thereby distributed to the surviving husband. No appeal was taken from that order and decree and it became final.

Four and a half months later, on February 20, 1956, Mr. Rouse, as surviving husband and as administrator of this estate, made a motion in the probate proceeding for an order vacating and setting aside the order settling the final account and the decree of distribution, upon the grounds that this order and decree had been taken against him through mistake, inadvertence, surprise, excusable neglect and extrinsic fraud. He filed two affidavits by himself and the affidavits of two other persons in support of the motion to vacate, and the respondents filed seven affidavits in opposition thereto. The affidavits are very lengthy, covering the claims and answers of the parties, respectively, and it is unnecessary to summarize their contents here. After a hearing the matter was submitted. The court later filed a written opinion, and an order was entered denying the motion to set aside the decree of distribution.

Mr. Rouse, as administrator of this estate and as surviving husband of the deceased, has appealed from this order. The appeal is presented on a settled statement and upon the

original records of the probate court insofar as they are involved in this appeal. The appellants contend that the decedent's gifts of community property were a nullity and created no rights in the donees, and that he has the right to avoid any such gift made without his knowledge and consent; that the naming of beneficiaries of insurance or retirement death benefits is not the making of a testamentary disposition but constitute attempted gifts to take effect at the death of the donor, and are utterly void; that the decree of distribution entered on October 6, 1955, was void since it was based upon a void contract by which the surviving husband sought to take property away from the estate without any authority from the probate court; and that the contingent contract for attorney's fees was void since it was not approved by the probate court.

██ Aside from any other consideration, it clearly appears that the motion to vacate and set aside the decree of distribution was based upon section 473 of the Code of Civil Procedure. This appears from the language used in making the motion, and from the fact that no other authorization for such a motion exists. The order appealed from is not one mentioned in section 1240 of the Probate Code, and in probate matters an order denying a motion to vacate a prior order or decree is not an appealable order. (*Estate of O'Dea,* 15 Cal.2d 637 [104 P.2d 368]; *Estate of Glassgold,* 97 Cal.App. 2d 859 [218 P.2d 1016].) It follows that the purported appeal must be dismissed.

If this were an appealable order and if the agreements of the parties were not to be considered, the result would be the same insofar as the appellants are concerned. ██ It is well settled that such a motion is addressed to the sound discretion of the trial court, and the order will not be disturbed unless it clearly appears that the court has abused its discretion; that it is for the trial court to determine the credibility of witnesses and to resolve conflicts in the evidence; and that its determination with respect to conflicting evidence is conclusive on appeal. (*Estate of Ryker,* 95 Cal.App.2d 507 [213 P.2d 420]; *Estate of Brady,* 95 Cal.App.2d 511 [213 P.2d 125]; *Baratti* v. *Baratti,* 109 Cal.App.2d 917 [242 P.2d 22]; *Reid* v. *Koeslag,* 106 Cal.App.2d 729 [236 P.2d 192].) The evidence here, presented in the form of affidavits, was conflicting as to every material point and for that reason alone the order would have to be affirmed if the matter was properly before this court. Moreover, the parties who are

solely interested executed an agreement and stipulation which was used to secure the main property in question, they fully carried out the provisions of that agreement and it was submitted for the approval of the court, and the decree of distribution was entered in the exact manner provided for in the agreement and requested of the court. ▮ In any event, the property represented by the insurance policy and the retirement fund having been acquired through the use of community funds could be voided by the husband, after the wife's death, as to a one-half only. (*Odone* v. *Marzocchi,* 34 Cal.2d 431 [211 P.2d 297, 212 P.2d 233, 17 A.L.R.2d 1109] ; *Sandrini* v. *Ambrosetti,* 111 Cal.App.2d 439 [244 P.2d 742].) By the decree of distribution the husband got exactly what he was entitled to and it would not appear that the estate, of which he was administrator, was in any way injured. Assuming that the matter could well have been handled in a different manner it would be an idle act to set aside the decree of distribution, on technical grounds, in order to have a similar one again entered.

It was alleged in the affidavits filed in support of the motion to vacate the decree of distribution that these appellants believed that the deceased had, during her lifetime, given other amounts to the sister and niece which were in fact community property, and that they desired time in which to investigate and ascertain the facts with respect to such matters. It is here argued that such transfers had been made without the knowledge or consent of the husband. Not only were these allegations denied in the opposing affidavits but a long period of time had elapsed after the making of the agreement, including several months after the decree of distribution was entered, and no definite facts were presented to the court. Moreover, in accordance with the agreement of the parties the decree of distribution contained a clause giving to the surviving husband, in its entirety, any later discovered property. Such property was not otherwise disposed of by the decree of distribution and that decree could in no way interfere with the subsequent discovery of such property, if any such property can still be found.

The matter of contingent attorney's fees involved services other than services in the probate proceeding, was not presented to or passed upon by the court in connection with the petition for distribution, and was not involved in the decree of distribution. It was provided in the agreement for such contingent fees that any amount allowed as attorney's fees

in the estate should be deducted from the contingent fee otherwise payable, and this was done. If, as appellants contend, they were in any way misled or taken advantage of by their attorneys the surviving husband may have a right of action against them, but nothing here appears which would have justified a reversal of the order denying the motion to vacate and set aside the decree of distribution, especially in view of the conflicting evidence presented.

While the order should be affirmed if the proper jurisdiction existed, the appeal must be dismissed and it is so ordered.

Griffin, J., and Mussell, J., concurred.