[Civ. No. 22300.   Second Dist., Div. One.   Nov. 27, 1957.]

Estate of MIKE M. NERSISIAN, Deceased. KARAPET NERSISIAN et al., Appellants, v. LEO KOLIGAN et al., Respondents.

[Civ. No. 22234.   Second Dist., Div. One.   Nov. 27, 1957.]

DAVID NERSISIAN et al., Petitioners, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

*Assigned by Chairman of Judicial Council.

562

Margolis, McTernan & Branton and John W. Porter for Appellants and Petitioners.

Joseph Scott, Charles Murstein, James C. Janjigian and A. H. Risse for Respondents.

DRAPEAU, J.*—Mike M. Nersisian was born in Armenia, now one of the soviet states. He came to America and accumulated property worth approximately $175,000. He died in 1952, a resident of Los Angeles County, California, leaving a last will and testament.

The will directed that his estate go to Armenian General Benevolent Union, as trustee, with directions as follows:

1. To distribute $10,000 to his sister, Margaret Agopian, of Muslugi, Armenia, U.S.S.R., or if she predeceased him to her two sons, share alike.

2. To distribute to his nephew, Bobken Nersisian, of Kellaki, Armenia, U.S.S.R., $500.

*Assigned by Chairman of Judicial Council.

3. To use $10,000 to establish a general hospital to bear his name at the city of Kirikh, Armenia, U.S.S.R., the city of his birth.

4. To distribute the remainder of his estate to his brothers Garabed Nersisian and David Nersisian and to his nephew, Napoleon Nersisian, share alike.

It is stated in the will that the brothers reside at Tiflis, Armenia, and the nephew at Vagarshabad, near Erivan, Armenia, U.S.S.R.

The will further provides that in the event it is not legally possible to transmit the property to the soviet heirs, "I do hereby direct that all of my estate shall be distributed to the said Armenian General Benevolent Union, a corporation, for use by it within the scope of its charitable and corporate purposes."

The will was admitted to probate in 1953. The order admitting the will to probate states that defaults of all of the legatees named as residing in the soviet union were entered.

In 1954, the executors filed their second annual account and petition for partial distribution. In the decree of partial distribution that followed it is stated that at the time of the making of the will and at all times since, all of the legatees were and are aliens; and that "they and each of them now reside, and have at all times during the lifetime of each of them, prior to, and at the time of making said will, and ever since the making of said will by deceased on July 29, 1950, and thereafter, have each resided within the Socialist Soviet Republic of Armenia only, none of them ever having left Armenia nor ceased to reside there. . . ."

The decree then finds that no reciprocity exists between residents of the Soviet Union or the republic of Armenia and the state of California; that the soviet heirs thus are not qualified to take under the will; and that the Armenian General Benevolent Union should receive the bulk of the estate in accordance with the prayer of the petition for partial distribution.

Garabed, David, and Napoleon Nersisian, legatees and heirs named in the will, appeal from the order of the probate court denying their motion to vacate and set aside the decree of partial distribution.

Grounds of appeal are:

1. The probate court was without jurisdiction to make the decree of partial distribution, because valid notice of the

proceedings leading up to the entry of that decree had not been given as required by law.

2. Since the defect in the jurisdiction of the probate court appears on the face of the judgment roll, it was error for the court to deny appellants' motion to vacate its prior decree.

3. The probate court having acted without jurisdiction and having refused to recognize this, appellants are entitled to relief either by appeal or by writ of certiorari.

The facts supporting these grounds of appeal may be epitomized as follows:

The will stated that testator's brothers lived in Tiflis, Armenia.

Copies of the petition for probate of the will were mailed to the brothers at that address, in an attempt to comply with section 328 of the Probate Code. Pertinent parts of that section provide that if heirs are not personally served copies of the notice of hearing of a petition to admit a will to probate, the notice must be mailed "postage prepaid, from a post office within this State, addressed to them at their respective places of residence, if known to the petitioner. . . ."

Tiflis is the capital city of another soviet state, the Republic of Georgia. Search of maps and other sources of geographical information shows that there is no "Tiflis" in the Russian Republic of Armenia.

■ All of the parties to this appeal have argued from the leading case of *Farmers etc. Nat. Bank* v. *Superior Court,* 25 Cal.2d 842 [155 P.2d 823], in which our Supreme Court says (at page 846): ". . . an order admitting a will to probate which includes the names of known heirs who have not been notified of the hearing is void upon its face, and the probate court, at least up to the time of closing the estate, has power to set it aside."

And (at p. 845), "Courts should be particularly alert to require compliance with statutory provisions relating to constructive notice, for a departure therefrom constitutes a denial of due process."

But in that case the Supreme Court holds that this jurisdictional defect can be cured by the general appearance of heirs through their attorneys.

So we come to what we think is the controlling question in this case: Did the two brothers appear in this case, by their attorneys?

Garabed's appearances are as follows:

August 24, 1954, filed request for special notice.

October 6, 1954, filed notice of appeal from an order settling second annual account, and for preliminary distribution.

December 10, 1954, filed application to vacate decree, settling second annual account and for preliminary distribution, made under section 473 of the Code of Civil Procedure.

January 13, 1955, application to vacate said decree; and the later notice of appeal from order denying same.

David's appearances are as follows:

November 3, 1954, filed notice of appeal from the order settling second annual account and for preliminary distribution.

January 13, 1955, filed affidavit in support of Garabad's application to vacate decree settling second annual account and for preliminary distribution.

While there might be some debate as to the sufficiency of these appearances, especially as to David, there is a document in the file which we think settles the argument as to whether or not there was sufficient appearance to cure the defect in the service of notice of the petition to probate the will.

This is from page 9 of the augmented record on appeal, and it is as follows:

" (Title of Court and Cause)

"Abandonment of appeal by appellants

"To the Clerk of the above entitled Court:

"You are hereby notified that the appeal from the judgment of the Superior Court of the State of California in and for the County of Los Angeles, in the above entitled cause, for which notices of appeal have heretofore been filed with said Clerk of the Superior Court, are hereby abandoned by appellants Karapet Nersisian, also known as Garabed Nersisian, Margaret Agapian, Tavid Nersisian, Napoleon Nersisian, and the City of Kirikh, Armenia, U.S.S.R., *and appellants consent that the jurisdiction of said Superior Court in said cause shall be restored.*

"Dated: January 12, 1955." (Emphasis added.)

This document was signed by the attorneys for "Karapet Nersisian aka Garabed Nersisian, Margaret Agapian, Tavid Nersisian, Napoleon Nersisian, City of Kirikh, Armenia, U.S.S.R."

It is to be noticed that this notice of abandonment of appeal spells the brother David's name "Tavid." But it is clear enough from the record here that David Nersisian was meant by his attorneys.

Therefore it would seem that whatever defect there may have been in the service of the notices of the petition to probate the will was cured by the appearance of all of the Armenian heirs and legatees.

This brings us to respondent executors' contention that appellants are nonresident aliens; that no reciprocal rights of inheritance exist among residents of the United States of America and residents of the Soviet Union (see Prob. Code, § 259); and that therefore appellants have no right to participate in this estate and no standing in it.

This contention we think is sound in law.

■ If a nonresident alien cannot allege and prove reciprocity he may not inherit under our laws. (Prob. Code, §§ 259-259.1; *Estate of Knutzen,* 31 Cal.2d 573, 578 [191 P.2d 747]; *Estate of Bevilacqua,* 31 Cal.2d 580 [191 P.2d 752]; *Estate of Karban,* 118 Cal.App.2d 240 [257 P.2d 649]; *Estate of Giordano,* 85 Cal.App.2d 588 [193 P.2d 771].)

The policy of our law as so expressed finds good practical reasons to support it. Consider the following remarks of the judge of the probate court who heard and denied the motion:

"The Court: You might have the law on it, but as a matter of fact how are you going to prove that any distribution to be made here to a Russian subject under Russia would be distributed to him and not taken by the Russian Government?"

And again, "The Court: . . . That matter has been gone into a number of times, not only by myself sitting in this Court but by other judges of this Court, and the evidence has been abundant that they would only receive—I think in one instance they had received about five per cent of that which was distributed and the Russian government would take the rest of it in duties and what not."

■ It follows therefore that persons not entitled to inherit can take no part in litigation in estates of decedents in this state, and they have no standing to complain of any order made with respect thereto. It has been said by our Supreme Court that persons having no interest in an estate in probate can not question the manner of its distribution. (*Estate of Spreckels,* 165 Cal. 597, 604 [133 P. 289].)

The fact that attorneys for appellants first discovered on

November 2, 1956, that the notices were mailed to Tiflis, Armenia, rather than to Tiflis, Georgia, does not change the views of this court hereunder expressed.

Appellants have also petitioned for a writ of certiorari to review this case, probably as a matter of precaution mostly.

We have stated the facts in this controversy at considerable length to throw light upon the reasoning of our conclusions about to be stated.

■ First. We approached the case as an impeachment of the entire proceeding for lack of jurisdiction. But this approach is untenable because the record on its face must affirmatively show that the probate court was without jurisdiction to make its order. (*Texas Co.* v. *Bank of America,* 5 Cal.2d 35, 41 [53 P.2d 127] ; *cf., In re. Dahnke,* 64 Cal. App. 555, 560 [222 P. 381].)

■ Second. The order appealed from denying the motion to vacate the decree of partial distribution is not appealable. Such an order is not mentioned in section 1240 of the Probate Code; and in *Estate of Rouse,* 149 Cal.App.2d 674, 679 [309 P.2d 34], it is so expressly held.

The argument of counsel for the Armenian heirs that we should hold the order appealable to do substantial justice does not commend itself to us. We do not have the power to add additional orders to the Probate Code section.

■ Third. Nor do we think that certiorari lies in the facts of this case. The Armenian heirs had an opportunity to perfect a lawful appeal. In fact they did appeal from the order of partial distribution, but they abandoned it. When there is a right of appeal certiorari does not lie. (Code Civ. Proc., § 1068.)

Therefore this court has no other alternative but to make the following orders:

The appeal is dismissed.

The petition for a writ of review is denied.

White, P. J., and Fourt, J., concurred.

Appellants' petition for a rehearing was denied January 23, 1958. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.