942 P.2d 933 (1997)
CAREER SERVICE REVIEW BOARD, an agency of the State of Utah, Plaintiff and Appellant,
v.
UTAH DEPARTMENT OF CORRECTIONS, an agency of the State of Utah, and O. Lane McCotter, in his capacity as Executive Director of the Utah Department of Corrections, Defendants and Appellee.
No. 950409.
Supreme Court of Utah.
July 22, 1997.
*935 Neal T. Gooch, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.
Frank D. Mylar, Asst. Atty. Gen., Salt Lake City, for defendants and appellees.
DURHAM, Justice:
The Utah Career Service Review Board ("the Board" or "CSRB") brought this action to enforce its administrative order to the Utah Department of Corrections and to O. Lane McCotter in his capacity as director of the Department of Corrections (collectively, "Corrections" or "UDC"). The district court granted Corrections' motion for summary judgment and dismissed the action. We reverse.
In April 1992, Corrections conducted an internal evidentiary hearing to consider allegations against Tim Parker, a senior correctional supervisor employed by the UDC. Corrections concluded from the evidence at that hearing that Parker had violated UDC weapons policy and had lied to a superior officer. Parker was disciplined and demoted from his *936 supervisory grade 23 position to a nonsupervisory position at grade 21.
Parker appealed Corrections' decision and disciplinary action by filing a grievance with CSRB which granted him an evidentiary hearing before a hearing officer (what the Board calls a "step 5" hearing). The hearing officer considered the evidence of both parties de novo and found, as had Corrections, that Parker had violated department policy. Nevertheless, the hearing officer concluded that Corrections had imposed "excessive discipline" and consequently reduced the sanctions against Parker. The Board approved Corrections' decision to give Parker a tenday suspension and to place a letter of reprimand in his file, but the Board held that Parker's demotion was unlawful and therefore ordered Corrections to restore Parker to his former rank and pay.
Corrections appealed this decision to the full review board of the CSRB, and Parker cross-appealed. The CSRB, sitting as a board of appellate review ("step 6"), ultimately upheld the decision of the hearing officer and on October 6, 1993, issued a "Decision, Order, and Final Agency Action" ("the 1993 Order"). The 1993 Order stated, "Grievant should be reinstated forthwith to his prior step and rank at Grade 23, and immediately reimbursed for the full amount of any salary and benefits not paid to date as a result of the demotion to Grade 21." Corrections sought judicial review in the Utah Court of Appeals, but upon stipulation of both parties the case was dismissed.
In the meantime, and unknown to the Board, Parker had voluntarily transferred to a grade 17 position as a truck driver at Utah Correctional Industries. Also, Parker's former position was eliminated when Corrections disbanded the Enforcement Bureau in November 1993. Corrections assumed that Parker's acceptance of the grade 17 position excused UDC from any further obligation to him; because the disbanding of the Enforcement Bureau rendered Parker's reinstatement to his former position impossible, UDC took the position that it could fully comply with the Board's 1993 Order merely by reimbursing Parker for the wages and benefits he lost between his dismissal and his subsequent acceptance of the truck-driving job, a period of approximately three months. Corrections calculated that the net difference in salary and benefits between grade 21 and grade 23 for the given period was $362.47. Accordingly, on February 1, 1994, Corrections sent Parker a check in that amount, along with a letter stating that this payment satisfied Corrections' full obligation to him under the Board's 1993 Order. Parker objected to Corrections' position and demanded that they comply with the order as given, but Corrections replied to Parker's objection by insisting that it had already fully complied with the Board's decision. Parker then moved the Board for an order directing Corrections to implement the Board's 1993 Order.
The Board treated Parker's motion for enforcement as a motion for clarification of the 1993 Order. It solicited responses and exhibits from both Parker and Corrections but determined on the basis of these submissions that further oral argument was not needed. On October 20, 1994, the Board issued an "Order Directing Agency to Implement Step 6 Decision" ("the 1994 Order"). The 1994 Order clarified the Board's 1993 Order and altered it in subtle ways. Essentially, the 1994 Order made clear that while Corrections was not required to restore Parker to his former position (which had been eliminated in 1993), it was obligated to restore him to his former rank and salary. The new order also required Corrections to pay Parker the difference in salary and benefits between grade 23 and his current grade 17 position rather than the difference between grade 23 and the grade 21 position to which he had been demoted by Corrections. The order further clarified that Corrections was to continue to pay Parker at his former grade 23 salary until "a legitimate personnel action effectuates a valid change in Grievant's pay."
Upon notification of the 1994 Order, Corrections took the position that the Board had exceeded its jurisdiction and sent the Board a letter indicating that Corrections would not comply. Corrections did not, however, apply to the Board for reconsideration, nor did it seek review of the decision in the Utah Court of Appeals as it had done in the case of the *937 1993 Order. Instead, insisting that the order was unlawful and void, Corrections ignored it and allowed it to become final. On January 27, 1995, the Board filed a complaint in the Third District Court, seeking enforcement of its 1994 Order. Both parties moved the district court for summary judgment; the Board's motion was denied, and Corrections' motion was granted.
The district court concluded that the Board lacked standing and authority to bring an enforcement action against Corrections and that the Board had exceeded its jurisdiction. The court also characterized the Board's enforcement action as a suit in mandamus and denied relief because it found that enforcement of the 1994 Order  which the court held unlawfully infringed upon Corrections' statutory duty to maintain strict safety and security standards  was not in the public interest and was therefore not compelled by equity. The Board argues that the district court erred in these findings and further maintains that its 1994 Order is res judicata and that many of the issues the trial court found dispositive should have been precluded from that court's consideration because they had already been decided in the Board's previous administrative action, from which Corrections failed to appeal. However, the trial court found that res judicata and collateral estoppel did not apply to the Board's administrative decision because the parties never fully and fairly litigated several issues before the Board.
We must first determine whether the Board had standing and authority to bring an enforcement action in civil court against Corrections, another agency of state government. If we conclude that the Board had standing and was legally authorized to bring this action, we must next decide whether the district court erred by considering issues that should have been precluded as res judicata or collateral estoppel. If estoppel applies to the Board's administrative action, our only other consideration should be whether the Board exceeded its jurisdiction in issuing the 1994 Order. If estoppel does not apply, we may consider the other collateral attacks on the Board's decision. This case was decided on summary judgment below, and "[b]ecause entitlement to summary judgment is a question of law, we accord no deference to the trial court's resolution of the legal issues presented." K & T, Inc. v. Koroulis, 888 P.2d 623, 627 (Utah 1994).

I. STANDING, AUTHORITY, DUE PROCESS
The trial court found that the Board's enforcement action against Corrections should have been barred because (i) the Board was not an "aggrieved party" and therefore did not have standing, and (ii) the Board did not have statutory authority to bring a lawsuit against another agency. Corrections further argues that the action violates constitutional guarantees of due process by combining adjudication and enforcement powers in one agency. We find no merit in any of these contentions.
The Board brought this enforcement action against Corrections under the Utah Administrative Procedures Act ("UAPA"), which states, "In addition to other remedies provided by law, an agency may seek enforcement of an order by seeking civil enforcement in the district court." Utah Code Ann. § 63-46b-19(1)(a) (1993).[1] The *938 Career Service Review Board is an agency within the meaning of UAPA, which defines "agency" broadly as "a board, commission, department, division, officer, council, office, committee, bureau, or other administrative unit of this state, including the agency head, agency employees, or other persons acting on behalf of or under the authority of the agency head." Id. § 63-46b-2(1)(b) (emphasis added). Also, because the injury alleged by the Board is "within the scope of statutory concerns," Corrections' refusal to submit to the Board's statutory authority constitutes an injury sufficient to establish the Board's standing in this case. See Utah Bankers Ass'n v. America First Credit Union, 912 P.2d 988, 993 (Utah 1996).
Corrections' due process argument concerns the bias that could potentially color an agency's judgment if it is both judge and advocate in an action. Here, however, the Board did not undertake its advocacy role until its judicial function had been completed. That a party seeks enforcement of its administrative order does not imply bias in the adjudication upon which the order was based.

II. COLLATERAL ESTOPPEL
The Board argues that Corrections should have been estopped from collaterally attacking the 1994 Order and that the district court erred by considering nonjurisdictional issues because all such substantive issues had already been settled by the Board in its administrative adjudication of Parker's grievance.
Res judicata, which "subsumes the doctrine of collateral estoppel," Stevensen v. Goodson, 924 P.2d 339, 353 (Utah 1996), applies to administrative adjudications in Utah.[2] We noted recently in Salt Lake Citizens v. Mountain States, 846 P.2d 1245 (Utah 1992), that "the doctrine of res judicata has been applied to administrative agency decisions in Utah since at least 1950." Id. at 1251 (citing North Salt Lake v. St. Joseph Water & Irr. Co., 118 Utah 600, 223 P.2d 577, 582-83 (1950)). In Mountain States, we reiterated the rule that "`the principles of res judicata apply to enforce repose when an administrative agency has acted in a judicial capacity in an adversary proceeding to resolve a controversy over legal rights and to apply a remedy.'" Id. (quoting Utah Dep't of Admin. Servs. v. Public Serv. Comm'n, 658 P.2d 601, 621 (Utah 1983)); see also United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966), quoted in Mountain States, 846 P.2d at 1251 n. 4. The Board's adjudication of Parker's grievance falls within this description; it is precisely the sort of quasi-judicial adversary proceeding to which the doctrines of res judicata and collateral estoppel should apply.
Four elements of issue preclusion are required for collateral estoppel: (1) The issue decided in the prior adjudication must be identical to the one presented in the action in question; (2) there must be a final judgment on the merits; (3) the party against whom the plea is asserted must be a party in privity with a party to the prior adjudication; and (4) the issue in the first action must be completely, fully, and fairly litigated. Searle Bros. v. Searle, 588 P.2d 689, 691 (Utah 1978).
The trial court found that collateral estoppel should not apply to the Board's 1994 Order because there had not been a full and fair litigation by the Board as to three issues: "whether Parker voluntarily accepted his UCI [truck driving] position, whether the UDC fully complied with the Board's October 6, 1993 order, or whether the CSRB exceeded its authority." An examination of the record reveals that the Board did in fact consider and decide each of these questions. Corrections, however, claims that this review did not constitute a full and fair litigation for *939 various reasons, including the facts that "[n]o party made a motion to clarify the order" and "no hearing was held and no opportunity to present testimony was provided."
But the record shows that on July 10, 1994, Parker did move the Board for an "Order directing [Corrections] to implement the Step 6 Decision heretofore entered." In light of Corrections' insistence that it had already compiled with the previous decision, the Board could not have disposed of Parker's enforcement motion without also clarifying the controversy about what the 1993 Order required. The Board's decision to clarify its order was thus reasonable and in fact necessary to resolve the question of compliance raised by Parker's motion. Furthermore, our case law does not require either a motion or a hearing for full and fair litigation but says only that "the parties must receive notice, reasonably calculated, under all the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." Copper State Thrift & Loan v. Bruno, 735 P.2d 387, 391 (Utah.Ct.App.1987), quoted in Atiya v. Salt Lake County, 988 F.2d 1013, 1020 (10th Cir.1993). Corrections does not claim to have received inadequate notice, nor does it appear to have been denied an opportunity to object to Parker's motion. Before the Board issued its 1994 Order, Corrections received a copy of the above-mentioned motion from Parker, submitted a response and accompanying exhibits of its own, received a copy of a reply and counter exhibits from Parker, and then submitted another response in reply to Parker's. On the basis of these documents, the Board determined that oral argument was not necessary, but even without oral argument it is apparent that Corrections had abundant opportunity to present its objections, which is all the rule requires. We therefore find that the review granted by the Board was adequate to constitute full and fair litigation.
Corrections makes other arguments as to why its collateral attacks on the 1994 Order should not be estopped under issue preclusion rules. Although none of these arguments persuades us that the Board's order is subject to collateral attack, Corrections does raise some defenses not addressed in the Board's 1994 Order. These issues require separate treatment.
First, Corrections claims that collateral estoppel is not a defense to arguments that the Board lacked jurisdiction to enter the orders. While this is true, see Utah Code Ann. § 67-19-19(3)(a); Olson v. Salt Lake City Sch. Dist., 724 P.2d 960, 964 (Utah 1986) (lack of jurisdiction may be raised at any time), we note that the Board does not argue that Corrections' jurisdictional arguments should be precluded, but only that the 1994 Order "was res judicata in regard to all defenses in the enforcement action other than jurisdiction." We will address Corrections' jurisdictional arguments below.
Second, Corrections argues that collateral estoppel does not apply to actions to enforce agency decisions because "the enforcement action is merely a continuation of the agency action." Our case law, cited above, clearly establishes that res judicata and collateral estoppel do apply to final agency adjudications. The Utah Code also clearly establishes that an enforcement action under section 63-46b-19 of the Utah Code, which authorizes an agency to seek enforcement of its order in district court, is distinct from the grievance procedures set forth in sections 67-19a-301 to -408 and from the appeal procedures set forth in sections 63-46b-14 and -16. While agency actions such as the Board's adjudication of Parker's grievance may be continued in the civil court system by filing an appeal in the Utah Court of Appeals, see §§ 63-46b-14, -16, an action seeking enforcement of a final order is not a continuation of the grievance. Corrections declined its opportunity to appeal and cannot now successfully argue that the Parker grievance is still pending. The fact that agencies may seek enforcement of their orders against recalcitrant parties in the civil courts does not mean that their decisions are not final until enforced by the courts. The enforcement action before us now is not a continuation of the former administrative adjudication, but a separate action to enforce the order in Parker's grievance proceeding.
*940 Third, Corrections argues that the issues decided by the Board were not identical to those before the district court. Specifically, Corrections argues that the district court's decision was based, at least in part, on various equitable defenses that the Board had never considered, including "[i]ssues regarding the public interest and statutory duties of McCotter to regulate conduct of peace officers and handling of weapons by supervisors" and the jurisdictional issue "of whether the October 1994 order violates DHRM rules and statutes." To the extent that the Board did not consider these issues, they cannot be precluded from the district court's determinations in the enforcement action. We will thus consider these equitable defenses and jurisdictional claims in their turn.
Finally, Corrections argues that the Board, under section 63-46b-19(3), is entitled to raise any defense allowed by law, which Corrections takes to include collateral attacks on the decision underlying the order. We disagree. Section 63-46b-19(3) states that in a civil enforcement proceeding, a defendant may raise certain enumerated defenses "in addition to any other defenses allowed by law." This section does not create a loophole in the doctrine of collateral estoppel by permitting defendants to resurrect issues in an enforcement action that were decided and put to rest in previous administrative proceedings between the parties. Defenses based on such precluded issues are not "allowed by law" so as to fall within section 63-46b-19(3).
We conclude that the district court should have applied collateral estoppel principles to the Board's 1994 Order and that it erred by permitting Corrections' collateral attack on that order. Various arguments, including arguments that Corrections complied with the 1993 Order, that Parker's voluntary transfer mooted Corrections' obligation to comply with Board orders, and that Parker waived his rights to be made whole by voluntarily accepting other work, were decided by the Board in its own adjudication and should not have been considered by the district court. The proper place for Corrections to have raised these arguments was on appeal to the court of appeals after the adverse decision of the Board. Corrections failed to appeal the Board's order, and it became final. The district court was thus precluded from considering the issues decided by the Board in its 1994 Order. Issues not decided by the Board, including Corrections' equitable arguments, were properly considered by the district court. The district court was also justified in considering Corrections' arguments that the Board lacked jurisdiction to enter the 1994 Order, because lack of subject matter jurisdiction may be raised at any time, Utah R. Civ. P. 12(h)(2); Barnard v. Wassermann, 855 P.2d 243, 248 (Utah 1993), and is specifically allowed as a defense in enforcement actions by our statutes. Utah Code Ann. § 63-46b-19(3)(a).

III. EQUITABLE DEFENSES
Corrections argues that because the Board "seeks enforcement of its order to command defendants to do a specified act," and because it "is seeking to compel a public official to comply with an allegedly legal mandate," the Board's enforcement action is an equitable action seeking an extraordinary writ of mandamus, and the district court's judgment should therefore be disturbed only if "necessary to prevent manifest injustice." See MacKay v. Hardy, 896 P.2d 626, 629 (Utah 1995). Corrections then raises, as an equitable defense, various arguments as to why enforcement of the 1994 Order would not be in the public interest and is therefore not "necessary to prevent manifest injustice." However, we do not reach this equitable defense because we find that the Board's enforcement action against Corrections is not a suit in mandamus but an action at law. Rule 65B of the Utah Rules of Civil Procedure authorizes extraordinary relief when no adequate remedy at law exists. The Board's enforcement action was brought under the statutory authority of UAPA, which provides, "In addition to other remedies provided by law, an agency may seek enforcement of an order by seeking civil enforcement in the district courts." Utah Code Ann. § 63-46b-19(1)(a) (1993). The fact that the statute also permits an agency to seek injunctive relief, *941 id. § 63-46b-19(1)(d)(ii), does not turn this action at law into a suit in equity.
[W]here the administrative decision or order merely provides a basis for the suit in the courts, a suit to enforce such an administrative decision or order is an original and independent proceeding, and such actions are actions at law, even though equitable relief is sought, and are not actions on the administrative decision or order.
73A C.J.S. Public Administrative Law and Procedure § 273 (1983) (citations omitted). The district court erred in granting summary judgment based on its perception that the Board's enforcement action was a suit in equity. Its subsequent conclusions that the Board was not entitled to mandamus relief and that enforcement of the 1994 Order would not be in the public interest were likewise in error.

IV. JURISDICTION
The trial court found that the Board was without subject matter jurisdiction to enter the 1994 Order. The subject matter jurisdiction of the Board is described in chapter 67-19a of the Utah Code, which sets forth the grievance and appeal procedures available to Utah career service employees. Section 67-19a-202(1)(a) provides:
[T]he board shall serve as the final administrative body to review appeals from career service employees and agencies of decisions about promotions, demotions, suspensions, written reprimands, wages, salary, violations of personnel rules, [etc.,]... that have not been resolved at an earlier stage in the grievance procedure. The board has no jurisdiction to review or decide any other personnel matters.
Utah Code Ann. § 67-19a-202(1)(a). Sections -404 through -406 provide for an initial evidentiary hearing before a hearing officer (step 5); sections -407 and -408 provide for an appeal of the hearing officer's decision before the entire review board (step 6). Section -408 says, "The board shall ... hold a hearing to review the hearing officer's decision... [and] review the decision of the hearing officer by considering the official record of that hearing and the briefs of the parties." Utah Code Ann. § 67-19a-408(1)(a)-(b).
The Board clearly had subject matter jurisdiction over Parker's appeal. Parker was a career service employee. See Utah Code Ann. §§ 67-19a-101(3), 67-19-3(2), 67-19-15(2)(b). The Board's review involved an appeal from a decision involving allegations that he had violated personnel policies. Corrections' decision resulted in a written reprimand as well as a demotion and a consequent reduction in Parker's wages or salary. These facts place Parker's grievance squarely within the Board's subject matter jurisdiction as it is described in section 67-19a-202.
The district court nevertheless gave the following six reasons for finding that the Board lacked subject matter jurisdiction:
a. Mr. Parker's voluntary acceptance of a truck driver job ... dissolved the CSRB's jurisdiction to hear his grievance....
b. The abolishment of Mr. Parker's former enforcement position ... further dissolved the CSRB's jurisdiction ....
c. The dismissal of the appeal of the October 6, 1993 order ended the CSRB's authority to make further orders and findings....
d. The UDC fully complied with the CSRB's October 6, 1993 [step 6] order
. . . .
e. The CSRB exceeded its jurisdiction by failing to properly "review" the UDC's hearing record ....
f. The CSRB's orders violated DHRM policy and state law.
While some of these "reasons" for the trial court's decision may be persuasive arguments, it is hard to see how any one of them goes to the issue of subject matter jurisdiction. In fact, many of these arguments are not jurisdictional at all but are substantive arguments that should have been outside the court's consideration as precluded issues.
The trial court's first reason for denying the Board's jurisdiction  "Parker's voluntary acceptance of a truck driver job"  seems to go to the issue of Parker's failure to mitigate his damages. If Corrections had pursued its appeal of the 1993 Order, his voluntary failure *942 to mitigate, if proved, might perhaps have reduced the damages Corrections would have been required to pay Parker. But Parker's failure to fully mitigate his damages could not have eliminated his claim entirely and certainly should not affect the Board's jurisdiction. Likewise, the second "jurisdictional" issue  "the abolishment of Mr. Parker's former enforcement position"  might conceivably have reduced the damages Corrections was obligated to pay Parker's but we can see no reason why this should affect the Board's jurisdiction over Parker's grievance; the district court should not have considered this issue.
The fourth issue cited by the trial court  "the UDC fully complied with the CSRB's October 6, 1993 order"  would, if accepted, be a valid defense in an action to enforce that order and is specifically preserved by section 63-46b-20(3)(c), which states that "a defendant may defend on the ground that ... the defendant has not violated the order." The order that the Board is seeking to enforce in this action, however, is the 1994 Order, not the 1993 Order. Corrections may claim to have complied with the 1993 Order as it understood that order, but Corrections does not and cannot claim to have complied with the 1993 Order as it was clarified by the 1994 Order.
The fifth issue  whether the Board failed to properly review Corrections' hearing record  challenges the standard of review employed by the Board; it does not challenge its jurisdiction. The Utah Administrative Code sets forth the standard of review and the degree of deference the Board should give to employment decisions of other administrative agencies: "The hearing officer shall give latitude and consideration to an agency's prior decision when the latter is supported by the findings of fact based on the evidence."[3] Utah Admin. Code R137-1-20 (1992). This rule has been interpreted in various decisions by the courts of this state. See In re Discharge of Jones, 720 P.2d 1356, 1363 (Utah 1986); Utah Dep't of Corrections v. Despain, 824 P.2d 439, 442-43 (Utah.Ct.App.1991); Utah Dep't of Corrections v. Sucher, 796 P.2d 721, 722-23 (Utah. Ct.App.1990). These cases establish the rule that
the CSRB must give "latitude and deference" to the Department's personnel actions. The CSRB's role in examining the Department's personnel actions is a limited one. The CSRB is restricted to determining whether there is factual support for the Department's charges against [a grievant] and, if so, whether the Department's sanction of dismissal is so disproportionate to those charges that it amounts to an abuse of discretion.
Despain, 824 P.2d at 443. In the case at hand, the Board's hearing officer did not give "latitude and deference" to Corrections' hearing record but, ignoring the record below, took new evidence on Parker's case and determined the facts de novo. Then, despite the fact that the CSRB hearing officer's findings largely reconfirmed the findings of Corrections' own hearing, the hearing officer determined that Corrections' actions in Parker's case constituted an abuse of discretion. In light of the administrative rule in force at the time of the 1992 hearing and the case law interpreting it, Corrections' argument that the hearing officer of the CSRB granted insufficient deference to Corrections' hearing record may well be correct. This finding is irrelevant to our present considerations, however, because Corrections failed to pursue an appeal of the 1994 Order instead allowing it to become final. The Board's decision is therefore res judicata, and issues decided by the Board are not subject to collateral attack. While we are sympathetic to Corrections' argument about the standard of review employed by the Board's hearing officer, it is one Corrections should have pursued before the court of appeals; it is not a question that *943 should have been before the district court in this action. This case involves only the enforcement of the Board's 1994 Order, not the review of Parker's grievance.
Ultimately, Corrections does identify two valid jurisdictional issues: first, whether the dismissal of the case in the court of appeals "dissolved" the Board's authority to make further factual findings and issue new orders in the form of clarifying the original order, and second, whether the Board has authority to prescribe a remedy requiring that state employees be paid a salary above their rank.
While neither of these issues properly goes to subject matter jurisdiction, they both are broadly "jurisdictional" within the meaning of section 63-46b-19(3) of UAPA: "In a proceeding for civil enforcement of an agency's order, in addition to any other defenses allowed by law, a defendant may defend on the ground that ... the order sought to be enforced was issued by an agency without jurisdiction to issue the order." Utah Code Ann. § 63-46b-19(3). Thus, while it is clear that the Board had the requisite subject matter jurisdiction to hear Parker's grievance and to issue a decision and order, Corrections may still argue under section 63-46b-19(3) that the Board lacked jurisdiction to issue the 1994 Order or that the Board exceeded its jurisdiction by prescribing remedies not within its authority to order.

A. Did the Board have continuing jurisdiction to issue the 1994 Order?
The trial court held, "The dismissal of the appeal of the October 6, 1993 order ended the CSRB's ability to make further orders and findings regarding Parker's grievance." The trial court's conclusion presents us with two issues: (i) whether an administrative agency retains jurisdiction over a matter after an appeal from the agency's decision has been dismissed by the appellate court, and (ii) if it does retain jurisdiction, whether the agency's continuing jurisdiction includes the authority to modify its previous order on the basis of subsequently discovered facts.
When a party institutes proceedings to review a decision or an order of an administrative agency, the agency is deprived of its jurisdiction over the matter during the pendency of the appeal. The Supreme Court of Nevada states, "It is generally accepted that where an order of an administrative agency is appealed to a court, that agency may not act further on that matter until all questions raised by the appeal are finally resolved." Westside Charter Serv., Inc. v. Gray Line Tours of Southern Nevada, 99 Nev. 456, 664 P.2d 351, 353 (1983); see also Fischback & Moore of Alaska, Inc. v. Lynn, 407 P.2d 174, 176 (Alaska 1965), overruled on other grounds by City & Borough of Juneau v. Thibodeau, 595 P.2d 626, 629 n. 6 (Alaska 1979); American Smelting & Refining Co. v. Arizona Air Pollution Control Hearing Bd., 113 Ariz. 243, 550 P.2d 621, 622 (1976); O'Bryant v. Public Utils. Comm'n, 778 P.2d 648, 655-56 (Colo.1989); Colorado Anti-Discrimination Comm'n v. Continental Air Lines, Inc., 143 Colo. 590, 355 P.2d 83, 86 (1960). See generally 73A C.J.S. Public Administrative Law and Procedure § 194 (1983) ("[T]he continuing power of a board to modify or change its orders is suspended during the pendency of an appeal as to questions raised by such appeal."). The Board was therefore without authority to modify its 1993 Order while the court of appeals was considering Corrections' petition for review of that order.
However, Corrections' appeal was dismissed by the court of appeals upon stipulation of both parties in January of 1994. Thus, when the Board issued its modified order in October of 1994, all questions raised by the appeal had been resolved, and the appeal was no longer pending. Furthermore,
[o]peration of the rule [divesting agencies of jurisdiction while an appeal is pending] is limited to situations where the exercise of administrative jurisdiction would conflict with the proper exercise of the court's jurisdiction. "If there would be no conflict, then there would be no obstacle to the administrative agency exercising a continuing jurisdiction that may be conferred upon it by law."
Westside Charter Serv., 664 P.2d at 353 (quoting Fischback & Moore, 407 P.2d at *944 176). The Board's actions in no way invaded the jurisdiction of the reviewing court. Once the court of appeals had dismissed Corrections' appeal of the 1993 Order, there could have been no conflict between the Board's administrative jurisdiction and the court's jurisdiction, and the rule divesting the Board of its jurisdiction would no longer apply.
This rule is consistent with the rule that when an appeal is taken from the decision of a trial court, the dismissal of that appeal results in the return of the matter to the jurisdiction of the trial court as if no appeal had ever been taken. See In re Brady's Estate, 95 Cal.App.2d 511, 213 P.2d 125, 127 (1950); Stites v. Duit Constr. Co., 903 P.2d 293, 303 n. 43 (Okla.1995); In re Estate of Burkhart, 594 P.2d 361, 363 (Okla.1979); 5 C.J.S. Appeal and Error § 653 (1993). Indeed, this court has also stated that "a voluntary dismissal without prejudice `render[s] the proceedings a nullity and leave[s] the parties as if the action had never been brought.'" Barton v. Utah Transit Auth., 872 P.2d 1036, 1039 (Utah 1994) (quoting In re Piper Aircraft Distribution Sys. Antitrust Litig., 551 F.2d 213, 219 (8th Cir.1977)). The dismissal of Corrections' appeal was voluntary, and under rule 41 of the Utah Rules of Civil Procedure, a voluntary dismissal is without prejudice unless otherwise specified in the order. Utah R. Civ. P. 41(a)(2). We can see no reason, and Corrections has argued none, why the effect should not be the same for the dismissal of an appeal from the decision or order of an administrative agency. This seems particularly true in light of Utah Rule of Civil Procedure 81, which indicates that "[t]hese rules [of civil procedure] shall apply to the practice and procedure in appealing from or obtaining a review of any order, ruling or other action of an administrative board or agency...." Utah R. Civ. P. 81(d); see also Utah R.App. P. 18. Thus, the dismissal of Corrections' appeal of the 1993 Order rendered that appeal a nullity, and to the extent that the Board had continuing jurisdiction to modify its 1993 Order, that jurisdiction was reinvested in the Board upon the court of appeals' dismissal of Corrections' appeal.
The remaining question is whether the Board had continuing jurisdiction to modify its 1993 Order to account for facts that were not available to the Board when it made its initial determination. The Board did not discover that Parker was working at a grade 17 position until after it had issued its 1993 decision (ordering Corrections to pay him "any salary and benefits not paid to date as a result of the demotion to Grade 21"). When Parker sought enforcement of the 1993 Order, the Board took new evidence, including evidence of Parker's current employment at grade 17. On the basis of this evidence, the Board amended its decision and ordered Corrections to give Parker back pay on the difference between grade 23 and grade 17. The trial court found that the Board's amendment of its previous order exceeded the Board's jurisdiction.
Section 67-19a-202(3) says, "In conjunction with any inquiry, investigation, hearing, or other proceeding, any member of the board may ... subpoena witnesses, documents, and other evidence." Utah Code Ann. § 67-19a-202(3). It does not say that the Board may reopen an adjudication and amend its final order to account for newly discovered facts, but as the clarification and enforcement of its 1993 Order is a "proceeding" within the meaning of this statute, the further investigation and fact finding of the Board are statutorily authorized.
Statutory authority for the Board's amendment of its prior order is more difficult to find. The Board argues that it is authorized to "clarify" its decisions under section 63-46b-1. But this section says only that the agency may request or order conferences with the parties to clarify the issues "prior to the beginning of an adjudicative proceeding" or "during an adjudicative proceeding." Id. § 63-46b-1(4)(a)(ii). This section provides no authority for the Board's "clarification" of its order after the proceeding is complete and the order has been issued.
The Board also defends its 1994 Order by citing language in section 67-19a-408(2) that the Board claims gives it authority to "grant `whatever other remedy' it deems appropriate." However, the language quoted does not, as the Board supposes, give the Board *945 the broad remedial powers it claims. Read in context the statute merely states, "In addition to whatever other remedy the board grants, it may order that the employee be placed on the reappointment roster." Id. § 67-19a-408(2). The Board's reliance on this statute is misplaced, but it is understandable because the Board's remedial powers are nowhere defined in the Utah Code, and section 67-19a-408(2)'s oblique reference to "other remedies" appears to be the only mention in the Code of the Board's remedial powers. It appears that the legislature assumed the Board would have the power to prescribe remedies through administrative order but failed to elaborate on the extent of that power.
Finally, the Board argues that because it is authorized to seek enforcement of its orders under section 63-46b-19(1), it has the implied power to determine whether its orders have been complied with or are in need of enforcement. The Board further argues that its members are authorized to gather evidence in conjunction with any inquiry, investigation, hearing, or other proceeding. See id. § 67-19a-202(3). We are willing to accept the proposition that the Board has the implied authority to determine whether its remedy has been instituted, but whether the Board has authority to correct previous orders by prescribing a modified remedy or awarding additional damages based on facts that arise during its compliance investigation is still not clear. We find unconvincing the Board's attempts to establish such authority under the various provisions of the Utah Code and conclude that the Board does not have any explicit statutory authority to make subsequent modifications to previously entered orders.
Courts in various jurisdictions are divided on the question of whether administrative tribunals, like courts, have the authority in the absence of a controlling statute to modify orders still under their control. While courts in some states have held that this authority is inherent and exists independent of, or apart from, any statutory authority, others have held that "since all administrative action must be grounded in statutory authority, the power of an administrative body to amend or modify its decision is also entirely statutory." 73A C.J.S. Public Administrative Law § 163 (1983); see also Comment Note, Annotation, Power of Administrative Agency to Reopen and Reconsider Final Decision as Affected by Lack of Specific Statutory Authority, 73 A.L.R.2d 939, 946-48 (1960). In Clark v. Hansen, this court joined the former jurisdictions in holding that "[i]nherent in the power to make an administrative decision is the authority to reconsider a decision." 631 P.2d 914, 915 (Utah 1981) (citing Wammack v. Industrial Comm'n of Arizona, 83 Ariz. 321, 320 P.2d 950 (1958); Handlon v. Town of Belleville, 4 N.J. 99, 71 A.2d 624 (1950)). We further stated: "The absence of specific authority in the governing statutes is not determinative. Every tribunal has some power to correct its own mistakes." Id. at 915; see also DLB Collection Trust v. Harris, 893 P.2d 593, 595 n. 1 (Utah.Ct.App. 1995).
Utah is among the majority of western states to have held that administrative agencies have the power to reconsider their decisions in the absence of statutory provisions to the contrary. See Wammack, 320 P.2d at 954 ("The power to reconsider is inherent in the power to decide."); In re Fain, 65 Cal. App.3d 376, 391, 135 Cal.Rptr. 543, 551 (1976) ("Any deliberative body  administrative, judicial or legislative  has the inherent power to reconsider an action taken by it unless the action is such that it may not be set aside or unless reconsideration is precluded by law."); Moschetti v. Board of Zoning Adjustment, 40 Colo.App. 156, 574 P.2d 874, 875 (1977) (applying principle from other jurisdictions that "an administrative board has authority to modify a decision at any time prior to the date an appeal must be perfected"); In re Petition of City of Shawnee, 236 Kan. 1, 687 P.2d 603, 614-15 (1984) (rule that trial court retains broad discretionary power to reexamine its rulings up until appeal is docketed in appellate court also applies to administrative board when acting in a quasi-judicial capacity); SAIF Corp. v. Fisher, 100 Or.App. 288, 785 P.2d 1082, 1083 (1990) ("In the absence of a statutory provision limiting its authority to do so, an agency has plenary authority ... to withdraw an order and to reconsider the decision embodied *946 in the order."); Hupp v. Employment Sec. Comm'n, 715 P.2d 223, 227-28 (Wyo. 1986) (Urbigkit, J., concurring specially, joined by Thomas, C.J., & Brown, J., in separate special concurrence) ("[A]n agency... may reconsider a decision if the agency has adopted rules ... regarding such reconsideration procedures."). But see In re Application for Authority to Conduct Savings & Loan Activities, 182 Mont. 361, 597 P.2d 84, 87-88 (1979) (declining to rule on "whether an administrative agency has inherent power to reconsider its decision"); Suryan v. Alaska Indus. Bd., 12 Alaska 571, 573 (1950) ("[A]n administrative body has no power to grant a rehearing or to set aside or modify its decisions except by virtue of express statutory provision or by necessary implication."); Yamada v. Natural Disaster Claims Comm'n, 54 Haw. 621, 513 P.2d 1001, 1004 (1973) (holding that "a statutory basis is necessary for an administrative body to initiate reconsideration of its prior final quasi-judicial decisions"); Armijo v. Save `N Gain, 108 N.M. 281, 771 P.2d 989, 993 (Ct.App.1989) (holding that "the power of any administrative agency to reconsider its final decision exists only where the statutory provisions creating the agency indicate a legislative intent to permit the agency to carry into effect such power").
We thus find that the Board was not without jurisdiction to issue the 1994 Order. Until an appeal was perfected, the Board retained jurisdiction and had the inherent authority to reconsider and modify its 1993 Order in light of subsequently discovered facts. The Board was temporarily divested of this authority during the pendency of Corrections' appeal but regained that authority upon the dismissal of the appeal and retained it until the time it issued the 1994 Order. While we may share some of Corrections' misgivings about the wisdom of the Board's modifications, Corrections failed to seek review of either the 1994 Order containing those modifications or the 1993 Order preceding it and cannot now be heard to attack collaterally the justice or equity of those orders.

B. Did the Board order remedies contrary to law and thus outside the Board's jurisdiction?
Finally, we address Corrections' argument that the Board's order to restore Parker to his former grade 23 pay rate "would require the UDC to violate Department of Human Resource Management ("DHRM") policies in that Parker would be paid at a higher rate than his grade allows." In the alternative, Corrections argues that because Parker's position was abolished before the order was issued, the Board's order would violate DHRM policy by "placing Parker in a supervisory or higher grade position without going through a competitive process [of hiring and selection]." The district court agreed that the Board's order violated DHRM policy and state law, and the court concluded that the Board exceeded its jurisdiction in issuing the order.
However, the Board's 1994 Order to reinstate Parker to his former rank and pay is not a voluntary transfer and therefore is not subject to the requirements of section 67-19-15.7(4) regarding DHRM policy. What is at issue here is not a hiring or promotion decision, but the enforcement of the Board's order that an employee who was illegally demoted be made financially whole. The policies of the DHRM do not apply to the issue of pay restoration. Holding otherwise would deprive the CSRB of much of its remedial power.
The district court erred in holding that the Board lacked standing to enforce its orders in district court and in failing to recognize the preclusive effect of the Board's 1994 Order. That order was res judicata, and Corrections' failure to appeal from the decision precludes it from assailing the issues decided therein by collateral attack. As to other claims raised by Corrections  that the Board lacked jurisdiction to issue the 1994 Order and that the Board's enforcement action was a suit in equity that cannot be enforced for policy reasons  we are unpersuaded. Therefore, we hold that the trial court erred by refusing to enforce the Board's final order of October 20, 1994.
Reversed.
*947 STEWART, Associate Chief Justice, concurring:
I agree with Justice Durham's opinion, but I am dubious about the breadth of some of her language concerning the scope of the continuing jurisdiction of an administrative agency to change an order after it has become final for the purpose of an appeal.
Nevertheless, I conclude that the Career Service Board's 1994 order was lawful. The Board's 1993 order stated, "Grievant [Tim Parker] should be reinstated forthwith to his prior step and rank at Grade 23, and immediately reimbursed for the full amount of any salary and benefits not paid to date as a result of the demotion to Grade 21." The essence of the 1993 order, as far as is pertinent here, was to return Parker to his prior rank and pay retroactively as of the time his ten-day suspension terminated so that he would lose no salary by virtue of his demotion. The 1994 order awarded Parker the difference between the grade 23 salary and a grade 17 salary, the grade for the position that he had taken after his demotion. If the Board erred in changing that aspect of the 1994 order, and even if the error were jurisdictional (which may or may not be the case), the Department of Corrections should have taken an appeal at that time. In not doing so, it waived its right to raise the issue on an appeal and cannot circumvent the waiver rule by a subsequent collateral attack on the 1994 order. In any event, the nub of the matter, as I see it, is that the 1994 order was simply intended to give full effect to what the Board sought to accomplish by its 1993 order, that is, to make Parker whole after the unlawful demotion.
ZIMMERMAN, C.J., concurs in the concurring opinion of STEWART, Associate C.J.
HOWE, Justice, dissenting:
I dissent. I will not attempt to respond to all of the extended analysis of the majority. Stripped to its essentials, the issue in this case is whether an administrative agency, after it has entered a final order and the time for rehearing has expired and a petition for judicial review has been filed and subsequently voluntarily dismissed, may then reopen its proceedings and enter a new and different order. It is clear to me that the agency may not do so. I would affirm the district court, which dismissed this action under section 63-46b-19(3), which provides:
In a proceeding for civil enforcement of an agency's order ... a defendant may defend on the ground that:
(a) the order sought to be enforced was issued by an agency without jurisdiction to issue the order[.]
I agree with the district court that
[t]he dismissal of the appeal of the October 6, 1993 order ended the CSRB's authority to make further orders and findings.
The October 6, 1993, order (the 1993 order) was captioned by CSRB as a "Decision, Order, and Final Agency Action" (emphasis added). A petition for judicial review of that order was filed by Corrections in the court of appeals pursuant to section 63-46b-14(1), which provides, "A party aggrieved may obtain judicial review of final agency action..." (emphasis added). That petition was subsequently dismissed upon stipulation of the parties.
As was his statutory right, Parker sought civil enforcement of the 1993 order by CSRB, but instead of promptly filing an enforcement action in the district court, CSRB reopened the 1993 decree and proceeded to substantially amend it, including ordering Corrections to pay Parker the difference in salary and benefits between grade 23 and grade 17 instead of the difference between grades 23 and 21 as ordered in the 1993 decree. CSRB apparently made this amendment because it learned that in August 1992, Parker had voluntarily applied for, competed for, and accepted employment as a truck driver at grade 17. None of the parties had notified CSRB of this event prior to its making the 1993 order. However, the only grievance that Parker had filed with CSRB was in April 1992 that he had been demoted from grade 23 to grade 21. He filed no additional grievance when he voluntarily accepted grade 17 employment. Finally, in October 1994, one year after CSRB had made the 1993 final order, it made its 1994 order and *948 sought its enforcement in the district court in this action.
The majority opinion correctly observes that there is no express statutory authority for CSRB to amend a previously entered order that has become final and appealable. However, the majority holds that it had "inherent" authority to "reconsider Parker's grievance and modify its order in the light of" "subsequently discovered facts." I disagree.
First, there had not been any "subsequently discovered facts." When the 1993 decree was entered, Parker, more than one year earlier, had voluntarily applied for, competed for, and accepted employment at grade 17. For reasons which only he knows, he did not bring this fact to the attention of CSRB before it entered its 1993 order. Nor did Parker ever file a grievance regarding his grade 17 employment. The CSRB is limited by section 67-19a-407 to hearing appeals from the decisions of hearing officers on grievances filed by Career Service employees. Parker did not file a grievance, and a hearing officer has never made a decision regarding his grade 17 employment. Thus I can only conclude that Parker had no complaint with his grade 17 employment, because he voluntarily left his grade 21 employment to seek it and did not file a grievance.
Second, and more fundamental, I am persuaded that in view of our statutory scheme contained in the Utah Administrative Procedures Act, §§ 63-46b-0.5 to -22, the CSRB had no authority to open up the 1993 decree and grant Parker additional relief. The Act authorizes any party to file a written request for reconsideration within twenty days after final agency action. § 63-46b-13. If reconsideration is not granted, then the agency's final order is subject to judicial review within thirty days. § 63-46b-14. There is no provision for reconsideration or rehearing by the agency thereafter. The same A.L.R. annotation that the majority cites and relies upon, 73 A.L.R.2d 939, Power of Administrative Agency to Reopen and Reconsider Final Decision as Affected by Lack of Specific Statutory Authority, states:
The fact that a statute creating an administrative agency provided for an appeal to the courts to review its determinations of a judicial nature has been held a factor tending to show that the statute was not intended to confer the power of rehearing and reconsideration upon the agency.
73 A.L.R.2d at 957.
The leading case cited by the annotation for this statement is Magma Copper Co. v. Arizona State Tax Commission, 67 Ariz. 77, 191 P.2d 169, 175 (1948). There, the court held that the fact that a statute provided for an appeal from the decision of the commission was conclusive evidence that its decision should be final, that an appeal should constitute the exclusive remedy of the taxpayer, and that the commission could not rescind its order and enter a new order upon reconsideration. Similarly, in Olive Proration Program, Etc. v. Agricultural Prorate Commission, 17 Cal.2d 204, 109 P.2d 918, 921 (1941), the court observed that the governing statute contained no provision giving the commission the authority to change its determination, and the fact that any order made by it may be reviewed in a judicial proceedings to be commenced within thirty days after its effective date was evidence of legislative intent to the contrary. See also Armijo v. Save `N Gain, 108 N.M. 281, 771 P.2d 989, 994 (Ct. App.1989) ("[I]n the absence of an express grant of authority, the power of any administrative agency to reconsider its final decision exists only where the statutory provisions creating the agency indicate a legislative intent to permit the agency to carry into effect such power.").
In attempting to demonstrate how CSRB regained jurisdiction after the voluntary dismissal of the review taken from the 1993 decree by Corrections, the majority cites and relies on cases from other jurisdictions which supposedly hold that when an appeal is dismissed, the lower court that entered the judgment regains jurisdiction of the case. Without taking the time or the space to analyze those cases here, suffice it to state that in Utah, after a district court has entered its final judgment and an appeal has been taken that is later voluntarily dismissed by the appellant, the district court does not have the authority to reopen its judgment, take additional evidence, and then *949 alter or amend its judgment. There are a few narrow exceptions, such as a timely motion under rule 60(b), Utah Rules of Civil Procedure, and in divorce matters where jurisdiction is continuous as provided for in Utah Code Ann. § 30-3-5. This same limitation on district courts would apply to administrative agencies. The majority relies on Clark v. Hansen, 631 P.2d 914 (Utah 1981), but there a rehearing was granted by the state engineer upon a timely motion before an appeal was taken.
The majority and concurring opinions attempt to make much of the fact that Corrections did not seek review of the 1994 order. Corrections was not required to do so. Section 63-46b-19(3)(a) provides, "In a proceeding for civil enforcement of an agency's order... a defendant may defend on the ground that ... the order sought to be enforced was issued by an agency without jurisdiction to enter the order[.]" Thus in this enforcement action, Corrections correctly defended on the ground that the CSRB had no jurisdiction to amend the 1993 order by entering the 1994 order with its substantial changes. The trial court properly upheld that defense. The majority opinion recognizes in the last sentence of part II that lack of subject matter jurisdiction may be raised at any time.
In conclusion, there have been no real "subsequently discovered facts" here. Parker was working at grade 17 for more than one year before the 1993 decree was entered but did not inform the CSRB of that fact until after the decree had been entered. More fundamental, however, is the fact that the Utah Administrative Procedures Act requires agencies to make final orders and provides that reconsideration may be sought by any party for twenty days thereafter. Following that window for reconsideration, provision is made for a petition for review to be filed within thirty days. No further provision is made for agency action following an appeal except that the agency may enforce its order in the district court. But the agency's authority to enforce its orders does not include the authority to reconsider the order and enter a new one with material changes. It is fundamental that administrative agencies are created by statute and their authority is limited to that conferred upon them. As pointed out in Heap v. Los Angeles, 6 Cal.2d 405, 57 P.2d 1323, 1324 (1936), if a commission can reopen a final order and make a new order, how many times can the commission do so, and within what time limits? Litigation must come to an end, and we should adhere to the orderly procedures set out in the Administrative Procedures Act, not circumvent them. Today's decision, with its "continuing jurisdiction" theme, introduces uncertainty and chaos into practicing before administrative agencies in this state.
RUSSON, J., concurs in the dissenting opinion of HOWE, J.
NOTES
[1] Section 63-46b-1(2)(e) of UAPA provides, "This chapter does not govern ... applications for employment and internal personnel actions within an agency concerning its own employees, or judicial review of those actions." Utah Code Ann. § 63-46b-1(2)(e) (1993). From this section, we conclude that UAPA does not apply to those personnel decisions of an agency that involve the agency's own employees, such as Corrections' original decision to demote Parker in April 1992. Nor does it apply to judicial review of an agency's internal personnel decisions, which are governed by the Utah Rules of Civil Procedure. Utah R. Civ. P. 1(a). UAPA's section 63-46b-1(2)(e) does not exclude administrative review of an agency's personnel decisions, however, and so we conclude that this section does not exclude the Board's review of Parker's grievance. Because the Board's review is controlled by the provisions of UAPA, the Board has explicit authority to seek enforcement of its orders in court under section 63-46b-2(1)(b) of that act. Section 67-19-30(2) of the Utah State Personnel Management Act also indicates that "[a]ll grievance. based upon a claim or charge of injustice or oppression, including dismissal from employment, resulting from an act, occurrence, commission, or condition shall be governed by Title 67, Chapter 19a, Grievance and Appeal Procedures, and Title 63, Chapter 46b, Administrative Procedures Act."
[2] Although the term "res judicata" is often used to describe the overall doctrine of preclusion, a distinction should properly be made between that branch of the doctrine which precludes the relitigation of previously decided claims, called either res judicata or claim preclusion, and that branch which precludes the relitigation of previously decided issues, known as either collateral estoppel or issue preclusion. See Noble v. Noble, 761 P.2d 1369, 1374 n. 5 (Utah 1988).
[3] In January of 1993, the language of this rule was substantially changed. The new rule states that the "evidentiary/step 5 hearing shall be a new hearing for the record, held de novo" and further states that "[t]he CSRB hearing officer shall first make factual findings based solely on the evidence presented at the hearing without deference to any prior factual findings of the agency." Utah Admin. Code R137-1-20.C (1993). Because the hearing at issue in this case took place in June of 1992, the standard set forth in the amended administrative code is inapplicable to the case at hand.